1   DAVID E. MASTAGNI, ESQ. (SBN 204244)
    davidm@mastagni.com
2   TAYLOR DAVIES-MAHAFFEY, ESQ. (SBN 327673)
    tdavies-mahaffey@mastagni.com
3   **MASTAGNI HOLSTEDT, A.P.C.**
    1912 I Street
4   Sacramento, California 95811-3151
    Telephone:     (916) 446-4692
5   Facsimile:      (916) 447-4614
6

7   Attorneys for Plaintiffs,
    JEFFREY BELLO-LAFRADES, et al.

8

9                  UNITED STATES DISTRICT COURT

10        NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO

11

| | |
|---|---|
| 12   Jeffrey Bello-Lafrades, Otis Brown, Keith Lederer, Gary Pedro, Darren Abeyta, Bryan Adams, Miguel Ahumada, Ruben Alvernaz, Amando Antonio, Cristian Aparicio-Aldana, Timothy Aung, Dominic Austin, Harinder Bains, Timothy Ballard, Michael Baluyut, Christian Barajas, Shawn Batey, Clodualdo Bello Jr., Joe Bello, Mario Benoit, John Best, Vinod Bhagirath, D'maree Bonner, Mario Bonner, Greg Bradley, Kimiyante Bryant Sr., Chuck Burke, Paul Burnett, Kevin Buss, Legival Cabansag, Guadalupe Camarillo, Courtney Camper, Paul Mark Tauyan Cantiller, Francisco Ceja, Marco Cerna, Ruben Cervantes, Abey Chanhsombath, Lana Chapman, Patricia Childress, Deepak Chopra, Vincent Cipponeri, Paul Bernard Cleary Jr., Don Cooper Jr., Lisa Cornista, Justin Crow, Eduardo Cruz, Fernando Cruz, Anthony Dauer, Wendell De Chavez, Clayton DeAmaral, Larry Delgado, Eric Diaz, Ryan Doan, Billy Joe Downs, Isiah Edwards, Gilbert Elvira Jr., Roberto Escobedo, Kyerra Evans-venson, Sylvia Farr, Mark Flanary, Mark Flynn, David Frye, Asser Garcia, Cesar Garibay, Nirmal Singh Gill, Jose De Jesus Gonzalez, Martin Gonzalez, Melody Goodrow, Irvin Green, Mauricio Green, Ian Guidry, Gregory Gutierrez, Sofiane Hachemi, Kevin Hardy, Mason Harrington, Jacqueline | Case No. 3:24-CV-07006-JD<br><br>[INDIVIDUAL ACTION, CLASS ACTION, & COLLECTIVE ACTION]<br><br>FIRST AMENDED COMPLAINT FOR:<br>1.  **Violations of the Fair Labor Standards Act (29 U.S.C. § 201 *et seq.*);**<br>2.  **Failure to Pay Minimum Wage (Cal. Labor Code §§ 1182.12 and 1197; Wage Order No. 1-2001 § 4)**<br>3.  **Failure to Pay Overtime (Cal. Lab. Code § 510; Wage Order No 1-2001 § 3)**<br>4.  **Failure to Timely Pay Wages when Due (Cal. Labor Code §§ 204, 210)**<br>5.  **Failure to Pay Wages pursuant to Statute or Contract (Cal. Labor Code §§ 221, 222, 223, 225.5)**<br>6.  **Failure to Pay Full Wages When Due (Cal. Labor Code §§ 201, 202, 203);**<br>7.  **Failure to Adhere to California Record Keeping Requirements (Cal. Labor Code §§ 226, 226.3, 1174, 1174.5, 1198; Wage Order No. 1-2001 § 7)**<br>8.  **Private Attorneys General Act Claim (Cal. Labor Code § 2698 *et seq.*)**<br>9.  **Unfair Business Practices (Cal. Business & Professions Code § 17200 *et seq.*)**<br>10.  **Declaratory Relief (28 U.S.C. § 2201 *et. seq.,* Cal. Code Civ. Proc. § 1060 *et. seq.*)** |

Hazlewood, Steven Hendrix, Connie Hill, Jerry Hill, Vanessa Hill, Antonio Hodges, Sandip Hundal, Melvin Jarvis Jr., Dylan Jimenez, Patrick Jimenez, Jaspreet Singh Johl, Ronald Jorvina, Romeo Jumangit, Michael Keegan, Keith Lawson, Christopher Lee, David Lemley, Shawn Lesky, Ethan Lewis, Gregory Lindke, Daniel Clyde Little, Samuel Locastro, Emmanuel Loera, Steven Loera, Michael Long, Jerome Luckett, Keith Lusetti, Robert Lynn, Travis Dean Mallonee, Andy Marfoldi, Ricky Marquez, Davonte Martinez, Ryan Martinez, Daryl Mason, Edsel Maybituin, Gregory McAroy, Kim Quincy McConico, Darlene McDade, Ronald McLen, Frank McMillan, Jordan McPherson, Jose Medina, Aron Meraz, Jowan Michael, Alejandro Mijangos, Cynthia Miramontes, Stephanze Mitchell, Falana Montgomery, Edgar Murillo, Ryan Murphy, Tasha Nelson, Kevin Nicholas, Ashley Nicks, Dejuan Norman, Joshua Normandeau, Russell Obee, David Ollison, Calvin Orellana, Roberto Orellana Jr., Orion Oyedeji, Rey Padilla, Anthony Paige, Scott Paradis, Paul Pastori, Javis Payne, Kyle Pecoraro, Lucas Pecoraro, Michael Pelton, Tony Phan, Dave Phanh, Rudy Phipps, Robin Pittman, Arthur Pompa Jr., Richard Porter Jr., Andrew Prather, John Price, Kimberly Price, Baljit Purewal, Brent Quade, Jason Quiles, Adrian Quintana, Roberto Quintana, Paul Rakkar, Richo Richardson, Collins Rivers, Michael Robinson, Robert Rockdaschel, Roxanne Rodriguez, Thomas Rohrbacher, Ryan Rollins, Pedro Romo, Danny Umana, Jovan Rush, Jagdish Sahota, Vicky Saini, Rupinder Samra, Surjit Sandhu, Baljeet Sangha, Dilbag Sangha, Damian Santa Ana, Christopher Schoenrock, Justin Sellers, Deepak Sharma, Mike Sharma, Yuvraj Sharma, Lorenzo Shaw, Larry Shields, Luchiana Short Houston, David Simpkins, Bulwinder Singh, Charanpreet Singh, Dilramnik Singh, Inderjit Singh, Jasbir Singh, Jaslok Singh, Jiwan Singh, Manpreet Singh, Mohinder Singh, Robert Slack, Kendra Sparks, Demetrus Spears, Bertha Spencer-Johnson, Matthew Storck, Anthony Stralla, Tracy Strickland

**Demand for Jury Trial**

Smith, Raymond Strong, Charles Surman, Karan Tewari, Ravinder Tewari, Shawinder Tewari, Larussell Thomas,  Edgar Thompson Jr., Jemar Thompson, Toriano Thompson, Ravati Tiwari,  Noel Tostado, Gracen Trinidad, Kerry Trosclair III, Ryan Turnage, Eddie Turner Jr., Charles Uoo, Antonio Valenzuela, Addison Vaughn, Eduardo Velarde, Richard Wallace, David Webb, Damian West, Dominic West, Nicholas Whitmire, Walter Whitt, John Wieckowski, Ayana Williams, Veante Williams, Roger Wilson, Marcus Woodring, Claudia Zamora Madrigal, on behalf of themselves and all others similarly situated; Beatrice Coombs, Manuel Furtado, Carl Jiles Sr., Michael Podplesky, Dev Takher

Plaintiffs,

v.

C&H Sugar Company, Inc., American Sugar Refining, Inc., and ASR Group Commodities (US), LLC,

Defendants.

## **INTRODUCTION**

1.    This action includes individual, collective, and class claims seeking unpaid compensation, overtime wages, interest thereon, waiting time penalties, liquidated damages, and other penalties, injunctive relief, declaratory relief, and reasonable attorney fees and costs, under, *inter alia*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. sections 207 and 216, and California law.

2.    Plaintiffs bring this action against Defendants C&H SUGAR COMPANY, INC., a Delaware corporation, AMERICAN SUGAR REFINING, INC., also a Delaware corporation, and ASR GROUP COMMODITIES (US), LLC, a Delaware limited liability company (collectively, "Defendants").

3.    Plaintiffs [Jeffrey Bello-Lafrades, Otis Brown, Keith Lederer, Gary Pedro, Darren Abeyta, Bryan Adams, Miguel Ahumada, Ruben Alvernaz, Amando Antonio, Cristian Aparicio-

Aldana, Timothy Aung, Dominic Austin, Harinder Bains,   Timothy Ballard, Michael Baluyut, Christian Barajas, Shawn Batey, Clodualdo Bello Jr., Joe Bello, Mario Benoit, John Best, Vinod Bhagirath, D'maree Bonner, Mario Bonner, Greg Bradley, Kimiyante Bryant Sr., Chuck Burke, Paul Burnett, Kevin Buss, Legival Cabansag, Guadalupe Camarillo, Courtney Camper, Paul Mark Tauyan Cantiller, Francisco Ceja,  Marco Cerna, Ruben Cervantes, Abey Chanhsombath, Lana Chapman, Patricia Childress, Deepak Chopra, Vincent Cipponeri, Paul Bernard Cleary Jr., Don Cooper Jr., Lisa Cornista, Justin Crow, Eduardo Cruz, Fernando Cruz, Anthony Dauer, Wendell De Chavez, Clayton DeAmaral, Larry Delgado, Eric Diaz,  Ryan Doan, Billy Joe Downs, Isiah Edwards, Gilbert Elvira Jr., Roberto Escobedo,  Kyerra Evans-venson, Sylvia Farr, Mark Flanary, Mark Flynn, David Frye, Asser Garcia, Cesar Garibay, Nirmal Singh Gill, Jose De Jesus Gonzalez, Martin Gonzalez, Melody Goodrow, Irvin Green, Mauricio Green, Ian Guidry, Gregory Gutierrez, Sofiane Hachemi, Kevin Hardy, Mason Harrington, Jacqueline Hazlewood, Steven Hendrix, Connie Hill, Jerry Hill, Vanessa Hill, Antonio Hodges, Sandip Hundal, Melvin Jarvis Jr., Dylan, Jimenez, Patrick Jimenez, Jaspreet Singh Johl, Ronald Jorvina, Romeo Jumangit, Michael Keegan, Keith Lawson, Christopher Lee, David Lemley, Shawn Lesky, Ethan Lewis, Gregory Lindke, Daniel Clyde Little,  Samuel Locastro, Emmanuel Loera, Steven Loera, Michael Long, Jerome Luckett, Keith Lusetti, Robert Lynn, Travis Dean Mallonee, Andy Marfoldi, Ricky Marquez, Davonte Martinez, Ryan Martinez, Daryl Mason, Edsel Maybituin, Gregory McAroy, Kim Quincy McConico, Darlene McDade, Ronald McLen, Frank McMillan, Jordan McPherson, Jose Medina, Aron Meraz, Jowan Michael, Alejandro Mijangos, Cynthia Miramontes, Stephanze Mitchell, Falana Montgomery, Edgar Murillo, Ryan Murphy, Tasha Nelson, Kevin Nicholas, Ashley Nicks, Dejuan Norman, Joshua Normandeau, Russell Obee, David Ollison, Calvin Orellana, Roberto Orellana Jr., Orion Oyedeji, Rey Padilla,  Anthony Paige, Scott Paradis, Paul Pastori, Javis Payne, Kyle Pecoraro, Lucas Pecoraro, Michael Pelton, Tony Phan, Dave Phanh, Rudy Phipps, Robin Pittman, Arthur Pompa Jr., Richard Porter Jr., Andrew Prather, John Price, Kimberly Price, Baljit Purewal, Brent Quade, Jason Quiles, Adrian Quintana, Roberto Quintana, Paul Rakkar, Richo Richardson, Collins Rivers, Michael Robinson, Robert Rockdaschel, Roxanne Rodriguez, Thomas Rohrbacher, Ryan Rollins, Pedro Romo, Danny Umana, Jovan Rush, Jagdish Sahota, Vicky Saini, Rupinder Samra, Surjit Sandhu, Baljeet Sangha, Dilbag Sangha, Damian

1  Santa Ana, Christopher Schoenrock, Justin Sellers, Deepak Sharma, Mike Sharma, Yuvraj Sharma,
2  Lorenzo Shaw, Larry Shields, Luchiana Short Houston, David Simpkins, Bulwinder Singh,
3  Charanpreet Singh, Dilramnik Singh, Inderjit Singh, Jasbir Singh, Jaslok Singh, Jiwan Singh,
4  Manpreet Singh, Mohinder Singh, Robert Slack, Kendra Sparks, Demetrus Spears, Bertha Spencer-
5  Johnson, Matthew Storck, Anthony Stralla, Tracy Strickland Smith, Raymond Strong, Charles
6  Surman, Karan Tewari, Ravinder Tewari, Shawinder Tewari, Larussell Thomas,  Edgar Thompson
7  Jr., Jemar Thompson, Toriano Thompson, Ravati Tiwari,  Noel Tostado, Gracen Trinidad, Kerry
8  Trosclair III, Ryan Turnage, Eddie Turner Jr., Charles Uoo, Antonio Valenzuela, Addison Vaughn,
9  Eduardo Velarde, Richard Wallace, David Webb, Damian West, Dominic West, Nicholas Whitmire,
10  Walter Whitt, John Wieckowski, Ayana Williams, Veante Williams, Roger Wilson, Marcus
11  Woodring, Claudia Zamora Madrigal ("Off-the-Clock Plaintiffs") bring individual claims under
12  California law related to Defendants' improper rounding practices and unpaid compensation for
13  essential pre- and post-shift duties.

14      4.      Off-the-Clock Plaintiffs, on behalf of themselves and acting as collective action
15  representatives for other similarly situated individuals, seek damages for unpaid compensation,
16  liquidated damages, and reasonable attorney fees and costs pursuant to the FLSA for Defendants'
17  improper rounding practices and unpaid compensation for essential pre- and post-shift duties.

18      5.      Plaintiffs JEFFREY BELLO-LAFRADES, OTIS BROWN, KEITH LEDERER, and
19  GARY PEDRO ("California Class Representatives") acting as class representatives seek damages for
20  unpaid compensation, liquidated damages, and reasonable attorney fees and costs on behalf of
21  themselves and all similarly situated current and former employees of Defendants, the general public
22  of the State of California, and those persons and entities affected by Defendants' unlawful and unfair
23  practices related to improper rounding practices and unpaid compensation for essential pre- and post-
24  shift duties under California law.

25      6.      While the same factual circumstances give rise to Off-the-Clock Plaintiffs' claims
26  under California Law and those claims under FLSA, Off-the-Clock Plaintiffs bring causes of action
27  under both statutes due to the different remedies and statute of limitations that each statute provides.

28      7.      Plaintiffs DOMINIC AUSTIN, JOE BELLO, JEFFREY  BELLO-LAFRADES,

D'MAREE BONNER, KEVIN BUSS, FRANCISCO CEJA, VINCENT CIPPONERI, BEATRICE COOMBS, DON COOPER JR., LARRY DELGADO, DAVID FRYE, MANUEL FURTADO, MARTIN GONZALEZ, JERRY HILL, SANDIP HUNDAL, CARL JILES SR., JASPREET SINGH JOHL, KEITH LAWSON, KEITH LUSETTI, ROBERT LYNN, RONALD MCLEN, FRANK MCMILLAN, EDGAR MURILLO, ROBERTO ORELLANA JR., MICHAEL PELTON, MICHAEL PODPLESKY, RICHO RICHARDSON, RYAN ROLLINS, SURJIT SANDHU, BALJEET SANGHA, DILBAG SANGHA, YUVRAJ SHARMA, INDERJIT SINGH, DEV TAKHER, AND WALTER WHITT ("Regular Rate Plaintiffs") bring individual actions seeking damages for lost overtime compensation, liquidated damages, and reasonable attorney fees and costs pursuant to 29 U.S.C. section 216(b) for the miscalculation of their regular rate for purposes of overtime compensation.

8.      The claims are organized into individual claims under the FLSA by Regular Rate Plaintiffs, collective action claims under the FLSA by Off-the-Clock Plaintiffs, with subclasses for individuals employed in sugar processing and individuals employed in the warehouse, individual claims under California law by Off-the-Clock Plaintiffs, and class action claims under California law by California Class Representatives, with subclasses for individuals employed in sugar processing and individuals employed in the warehouse, and additional subclasses for individuals  no longer employed by Defendants as detailed in the Overview of Claims below.

**BRIEF OVERVIEW OF CLAIMS**

This section summarizes the claims asserted in this action to provide clarity on the scope and structure of the individual, collective, and class claims:

9.      **Individual Claims by Regular Rate Plaintiffs-** Regular Rate Plaintiffs bring individual claims against all Defendants for violations of the FLSA for miscalculation of the regular rate of pay for overtime compensation from July 29, 2017 to June 28, 2018.

10.      **Collective Action Claims by Off-the-Clock Plaintiffs-** Off-the-Clock Plaintiffs bring  claims of behalf of themselves and all similarly situated individuals against all Defendants for violations of the FLSA for failure to pay overtime for pre-and post-shift duties and improper time-rounding practices.

11.    **Individual Claims by Off-the-Clock Plaintiffs-** Off-the-Clock Plaintiffs bring individual claims against all Defendants for violations of California law related to Defendants' improper rounding practices and unpaid compensation for essential pre- and post-shift duties.

12.    **Class Action Claims by California Class Representatives-** California Class Representatives bring claims of behalf of themselves and all similarly situated individuals against all Defendants for violations of California law related to Defendants' improper rounding practices and unpaid compensation for essential pre- and post-shift duties.

13.    **California Labor Code Private Attorneys General Act (PAGA) Claims by Jeffrey Bello-Lafrades and Otis Brown-** Bello-Lafrades and Brown bring claims on behalf of themselves and all aggrieved employees against all Defendants for violations of PAGA, California Labor Code § 2698 et seq.

## THE PARTIES

14.    Off-the-Clock Plaintiffs are each a natural person who was employed by Defendants in a non-exempt hourly position to perform work related to the processing of raw sugar into refined sugar or related to shipping, receiving, and related warehouse activities within the state of California between the four years before the filing of the original Complaint and the time this action proceeds to final judgment or settlement. Off-the-Clock Plaintiffs bring all claims under California law as individuals. Off-the-Clock Plaintiffs bring all FLSA claims on behalf of themselves, and all similarly situated current and former employees of Defendants.

15.    Regular Rate Plaintiffs are each a natural person who was employed by Defendants in a non-exempt hourly position to perform work related to the processing of raw sugar into refined sugar within the state of California between July 29, 2017 and June 28, 2018.

16.    Plaintiff JEFFREY BELLO-LAFRADES is a natural person who is employed by Defendants in a non-exempt hourly position to perform work related to the processing of raw sugar into refined sugar within the state of California. Plaintiff Bello-Lafrades brings this action on behalf of himself and all similarly situated current and former employees of Defendants.

17.    Plaintiff KEITH LEDERER is a natural person who was formerly employed by Defendants in a non-exempt hourly position to perform work related to the processing of raw sugar

into refined sugar within the state of California. Plaintiff Lederer brings this action on behalf of himself and all similarly situated former employees of Defendants.

18.    Plaintiff OTIS BROWN is a natural person who is employed by Defendants in a non-exempt hourly position to perform work related to shipping, receiving, and related warehouse activities within the state of California. Plaintiff Brown brings this action on behalf of himself and all similarly situated current and former employees of Defendants.

19.    Plaintiff GARY PEDRO is a natural person who was formerly employed by Defendants in a non-exempt hourly position to perform work related to shipping, receiving, and related warehouse activities within the state of California. Plaintiff Pedro brings this action on behalf of himself and all similarly situated former employees of Defendants.

20.    On information and belief, Defendant C&H SUGAR COMPANY, INC. is a corporation organized under the laws of the state of Delaware, with its corporate headquarters located in Crockett, California. On information and belief, C&H SUGAR COMPANY, INC. employs or has employed at least forty (40) individuals in non-exempt hourly positions to provide work refining and processing raw sugar into refined sugar and related activities, and at least forty (40) individuals in non-exempt hourly positions to provide work related to shipping, receiving, and related warehouse activities within the state of California during the applicable statutory time periods stated herein. At all relevant times, C&H SUGAR COMPANY, INC. is and was Plaintiffs, Collective Action Members, and California Class Members' "employer" pursuant to 29 U.S.C. section 203 and California law.

21.    On information and belief, AMERICAN SUGAR REFINING, INC. is a corporation organized under the laws of the state of Delaware, with its corporate headquarters located in West Palm Beach, Florida. On information and belief, AMERICAN SUGAR REFINING, INC. employs or has employed, at least forty (40) individuals in non-exempt hourly positions to provide work refining and processing raw sugar into refined sugar and related activities, and at least forty (40) individuals in non-exempt hourly positions to provide work related to shipping, receiving, and related warehouse activities within the state of California during the applicable statutory time periods stated herein. At all relevant times, AMERICAN SUGAR REFINING, INC. is and was Plaintiffs, Collective

Action Members, and California Class Members' "employer" pursuant to 29 U.S.C. section 203 and California law.

22.    On information and belief, ASR GROUP COMMODITIES (US), LLC is a limited liability company organized under the laws of the state of Delaware, with its corporate headquarters located in West Palm Beach, Florida. On information and belief, ASR GROUP COMMODITIES (US), LLC employs or has employed, at least forty (40) individuals in non-exempt hourly positions to provide work refining and processing raw sugar into refined sugar and related activities, and at least forty (40) individuals in non-exempt hourly positions to provide work related to shipping, receiving, and related warehouse activities within the state of California during the applicable statutory time periods stated herein. At all relevant times, ASR GROUP COMMODITIES (US), LLC is and was Plaintiffs, Collective Action Members, and California Class Members' "employer" pursuant to 29 U.S.C. section 203 and California law.

## JURISDICTION AND VENUE

23.    Jurisdiction for this individual, collective, and class action is conferred on this Court by 28 U.S.C. section 1331, and section 16(b) of the Fair Labor Standards Act, 29 U.S.C. section 216(b). This Court has subject matter jurisdiction of this action pursuant to 29 U.S.C. section 216(b).

24.    This Court has supplemental jurisdiction over the California law claims alleged in this action under 28 U.S.C. section 1367, because they form part of the same case or controversy as the aforementioned claims.

25.    The United States District Court for the Northern District of California has personal jurisdiction over Defendant C&H SUGAR COMPANY, INC. because it does business in California and within this District, and because the acts giving rise to this action occurred in this State and this District.

26.    This Court has personal jurisdiction over Defendant AMERICAN SUGAR REFINING, INC. because it has applied to the California Secretary of State to do business and is doing business in California and within this District, and because the acts giving rise to this action occurred in this State and this District.

27.    This Court has personal jurisdiction over Defendant ASR GROUP COMMODITIES

1  (US), LLC because it has applied to the California Secretary of State to do business and is doing
2  business in California and within this District, and because the acts giving rise to this action occurred
3  in this State and this District.

4        28.    Venue is proper in this District pursuant to 28 U.S.C. section 1391(b)(2) and (c)
5  because a substantial part of the events giving rise to the claims described herein, including the work
6  performed by Plaintiffs, Collective Action Members, and California Class Members, and the
7  underpayment of wages earned but unpaid, occurred within the Northern District of California.
8  Further, on information and belief, Defendants continue to perform substantial business operations
9  within the Northern District of California. A majority of the Plaintiffs are currently employed by
10 Defendants and performed work giving rise to the claims set forth in this action within the Northern
11 District of California. The unlawful acts alleged herein have a direct effect on Regular Rate Plaintiffs
12 and Off-the-Clock Plaintiffs, and those similarly situated within the state of California and within this
13 judicial district. Each and every Defendant named is or was, at all times relevant hereto, a person,
14 corporation, or other business entity existing and operating within the confines of the state of
15 California, employing individuals to work within this state and this District, and thus subject to the
16 jurisdiction of California courts by reason of "minimum contacts" in California, and/or by purposeful
17 availment of the California market for labor of the kind provided by Plaintiffs, Collective Action
18 Members, and California Class Members, and did transact and conduct business in the state of
19 California, and are thus subject to the jurisdiction of all laws, regulations, and court decisions rendered
20 by the state of California. Defendants maintain offices, operate businesses, employ persons, conduct
21 business in, and pay employees by illegal payroll practices and policies in the state of California.

22                               **COLLECTIVE ACTION ALLEGATIONS**

23       29.    Off-the-Clock Plaintiffs repeat and re-allege each and every allegation by reference
24 contained in all previous paragraphs.

25       30.    Off-the-Clock Plaintiffs bring the Second and Third Claims for Relief for violation of
26 the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. section 216(b), on
27 behalf of themselves and all other similarly situated individuals, for unpaid wages, liquidated
28 damages under a three-year statute of limitations, and relief incident and subordinate thereto,

1    including attorney fees and costs.

2        31.    The Second and Third Claims for Relief for violations of the FLSA are brought and

3    maintained as an "opt-in" collective action pursuant to 29 U.S.C. section 216(b) for all violations of

4    the FLSA.

5        32.    Pursuant to 29 U.S.C. sections 216(b) and 256, all Off-the-Clock Plaintiffs have

6    executed and hereby file with the Court their consent in writing to become a party Plaintiff in this

7    action[1]. When other similarly situated individuals join this action, their consents will be filed with the

8    Court. The written consent forms identify each Plaintiff by name and reflect their intent to be a party

9    to this lawsuit.

10       33.    A collective action is a superior method for bringing this action in that there is a well-

11   defined community of interest in the questions of law and fact.

12       34.    Collective Action Members are similarly situated and are subject to Defendants'

13   common practices, policies, or plans of failing to compensate them for all hours worked and refusing

14   to pay the required amount of overtime compensation, in violation of the FLSA.

15       35.    Off-the-Clock Plaintiffs and Collective Action Members consist of two proposed

16   subclasses of employees.

17       36.    The first proposed subclass includes the following similarly situated individuals

18   ("Sugar Processing Collective Action Members"): all individuals employed by Defendants in non-

19   exempt hourly positions to provide work refining and processing raw sugar into refined sugar and

20   related activities within the state of California who performed uncompensated pre-shift and post-shift

21   duties and worked more than forty (40) hours in a workweek but were not paid the required overtime

22   during the three years before the filing of the instant Complaint, or the effective date of any applicable

23   tolling agreement, whichever is earlier, and ending at the time this action proceeds to final judgment

24   or settlement (the "Collective Action Period").

25       37.    The second proposed subclass includes the following similarly situated individuals

---

[1] Dylan Jimenez is a named Plaintiff in this action with claims pursuant to California law. However, he has not filed a consent to join the lawsuit as he separated from employment more than three years prior to the filing of this suit and therefore the statute of limitations has run on his FLSA claims.

("Warehouse Collective Action Members"): all individuals employed by Defendants in non-exempt hourly positions to provide work shipping, receiving, and related warehouse activities within the state of California who performed uncompensated pre-shift and post-shift duties and worked more than forty (40) hours in a workweek but were not paid the required overtime at any time during the Collective Action Period.

38.     Sugar Processing Collective Action Members and Warehouse Collective Action Members will be collectively referred to as "Collective Action Members."

39.     Off-the-Clock Plaintiffs reserve the right to name additional Collective Action representatives and to identify sub-classes and sub-class representatives as may be necessary and appropriate.

40.     The identity of all Collective Action Members is readily ascertainable from Defendants' records, and notice can be provided to all Collective Action Members by conventional means such as U.S. mail, email, and workplace postings.

41.     Common questions of law and fact in the action exist that relate to and affect the rights of each member of the Collective Action, including, but not limited to:

      a)  whether Defendants maintained a policy requiring Collective Action Members to perform uncompensated pre-shift and post-shift duties and work in excess of forty (40) hours per week without paying them full and proper overtime compensation;

      b)  whether the pre-shift and post-shift duties are an integral and indispensable part of the principal activities for which Collective Action Members are employed;

      c)  whether the compensability of pre-shift and post-shift duties is regulated under a collective bargaining agreement;

      d)  whether Defendants' time-rounding practices were neutral and did not result, over a period of time, in the failure to compensate Collective Action Members properly for all the time they actually worked;

      e)  whether Defendants' violations of the FLSA were willful, knowing, and/or reckless for the purpose of the statute of limitations;

      f)  whether Defendants C&H SUGAR COMPANY, INC., AMERICAN SUGAR

1    REFINING, INC., and ASR GROUP COMMODITIES (US), LLC are joint

2    employers for the purposes of liability under the FLSA; and

3        g)  what relief is necessary to remedy Defendants' unlawful conduct alleged herein.

4        42.    The attorneys for Collective Action Members are experienced and capable in the field

5    of the FLSA and labor and employment litigation and have successfully represented claimants in

6    other litigation of this nature. Of the attorneys designated as counsel in this action, David E. Mastagni,

7    Taylor Davies-Mahaffey, and Amanda McCarthy will actively conduct and be responsible for

8    Plaintiffs' case herein.

9        43.    This action is properly maintained as a collective action because the prosecution of

10    separate actions by the individual Collective Action Members would create a risk of varying

11    adjudications with respect to those individuals, which would establish incompatible standards of

12    conduct for the Defendants and, as a practical matter, be dispositive of the interests of the other

13    members not parties to the adjudications, or substantially impair or impede their ability to protect

14    their interests.

15        44.    Since Collective Action Members were/are subject to Defendants' common practices,

16    policies, or plans of failing to compensate at the legally required rate in violation of the FLSA, this

17    Court should conditionally certify the Collective Action and authorize facilitated notice to similarly

18    situated individuals pursuant to 29 U.S.C. section 216(b) and *Hoffman-LaRoche Inc. v. Sperling*, 493

19    U.S. 165 (1989).

20        45.    On information and belief, the names and addresses of the Collective Action Members

21    are available from Defendants, and notice should be provided by first class mail to their last known

22    address, by electronic mail, and by workplace posting as soon as possible.

23                         **CLASS ACTION ALLEGATIONS**

24        46.    Plaintiffs Bello-Lafrades and Brown, on behalf of themselves and all other individuals

25    similarly situated, repeat and re-allege each and every allegation by reference contained in all previous

26    paragraphs.

27        47.    Plaintiff Bello-Lafrades, as Class Representative, brings this action on behalf of a class

28    of all similarly situated individuals, pursuant to Federal Rule of Civil Procedure 23. The

proposed class includes the following similarly situated individuals ("Sugar Processing California Class Members"): all individuals employed by Defendants in non-exempt hourly positions to provide work refining and processing raw sugar into refined sugar and related activities within the state of California who performed uncompensated pre-shift and post-shift duties during the four years before the filing of the instant Complaint, or the effective date of any applicable tolling agreement, whichever is earlier, and ending at the time this action proceeds to final judgment or settlement (the "California Class Period").

48.     Plaintiff Brown, as Class Representative, brings this action on behalf of a class of all similarly situated individuals, pursuant to Federal Rule of Civil Procedure 23. The proposed class includes the following similarly situated individuals ("Warehouse California Class Members"): all individuals employed by Defendants in non-exempt hourly positions to provide work shipping, receiving, and related warehouse activities within the state of California who performed uncompensated pre-shift and post-shift duties during the California Class Period.

49.     Sugar Processing California Class Members and Warehouse California Class Members will be collectively referred to as "California Class Members."

50.     Plaintiffs propose a sub-class, represented by Plaintiffs Lederer and Pedro. Plaintiff Lederer, as Sub-Class Representative, brings this action on behalf the following similarly situated individuals ("Sugar Processing California Waiting Time Sub-Class"): all Sugar Processing California Class Members who separated from employment but were not paid all wages and compensation due upon termination.

51.     Plaintiff Pedro, as Sub-Class Representative, brings this action on behalf the following similarly situated individuals ("Warehouse California Waiting Time Sub-Class"): all Warehouse California Class Members who separated from employment but were not paid all wages and compensation due upon termination.

52.     The Sugar Processing California Waiting Time Sub-Class and the Warehouse California Waiting Time Sub-Class will be collectively referred to as the "California Waiting Time Sub-Class."

53.     Plaintiffs reserve the right to name additional class representatives and to identify sub-

1   classes and sub-class representatives as may be necessary and appropriate.

2       54.   Ascertainability. The identity of all California Class Members and California Waiting

3   Time Sub-Class Members is readily ascertainable from Defendants' records, and class notice can be

4   provided to all by conventional means such as U.S. mail, electronic mail, and workplace postings.

5       55.   Numerosity. The size of the class makes a class action both necessary and efficient.

6   On information and belief, the class and sub-class consist of over 40 non-exempt employees currently

7   employed or formerly employed by Defendants who performed work within the state of California

8   during the applicable statute of limitations period(s). Members of the class and sub-class are

9   ascertainable but so numerous that joinder is impracticable. The class and sub-class include future

10  class members who will benefit from the monetary, declaratory, and injunctive relief sought herein

11  and whose joinder is inherently impossible.

12      56.   Common Questions of Law and Fact. This case poses common questions of law and

13  fact which are likely to generate common answers advancing resolution of the litigation, affecting the

14  rights of all California Class Members, including:

15          a)  whether Defendants maintained a policy requiring California Class Members to

16              perform uncompensated pre-shift and post-shift duties and work in excess of forty

17              (40) hours per week and/or eight (8) hours per day without paying them full and

18              proper overtime compensation;

19          b)  whether the pre-shift and post-shift duties are compelled by the necessities of the

20              employer's business;

21          c)  whether time spent performing pre-shift and post-shift duties is time when

22              California Class Members are subject to Defendants' control;

23          d)  whether time spent performing pre-shift and post-shift duties is time during which

24              California Class Members are suffered or permitted to work with Defendants'

25              knowledge;

26          e)  whether Defendants' time-rounding practices were neutral and did not result, over

27              a period of time, in the failure to compensate California Class Members properly

28              for all the time they actually worked;

f) whether Defendants' policies, practices, programs, procedures, protocols, and plans regarding the prompt payment of wages are lawful;

g) whether Defendants' policies, practices, programs, procedures, protocols, and plans regarding recording and calculation of the payment of overtime are lawful;

h) whether Defendants timely paid wages pursuant to California Labor Code section 204;

i) whether Defendants' failure to timely pay wages was willful or intentional for the purposes of California Labor Code section 210;

j) whether Defendants paid California Class Members their full wages as required by California Labor Code sections 221, 222, and 223;

k) whether Defendants' failure to pay California Class Members according to California Labor Code sections 221, 222, and 223 was willful or intentional for the purposes of California Labor Code section 225.5;

l) whether Defendants willfully failed to make timely payment of final wages to California Waiting Time Sub-Class Members, as required by California Labor Code sections 201-203;

m) whether Defendants provided California Class Members with accurate itemized wage statements as required by California Labor Code section 226;

n) whether Defendants maintained records for California Class Members as required under California Labor Code sections 226 and 1174 and Industrial Welfare Commission ("IWC") Wage Order No. 1-2001 section 7;

o) whether California Class Members are entitled to penalties pursuant to the Private Attorneys General Act ("PAGA") for Defendants' violation of the California Labor Code, IWC Order 1-2001, and/or the FLSA;

p) whether Defendants engaged in unfair and unlawful business practices in violation of Business & Professions Code section 17200 *et seq*. by violating the California Labor Code and/or the FLSA;

q) whether Defendants C&H SUGAR COMPANY, INC., AMERICAN SUGAR

REFINING, INC., and ASR GROUP COMMODITIES (US), LLC are joint employers of California Class Members;

r) whether the named Defendants conspired with each other and/or with any unnamed co-conspirators, as alleged herein;

s) whether any Defendants aided and abetted other Defendants in the commission of the violations alleged herein;

t) whether any Defendants acted as the agent of other Defendants in the commission of the violations alleged herein; and

u) what relief is necessary to remedy Defendants' unfair and unlawful conduct alleged herein.

57.    <u>Typicality</u>. The claims of individual Plaintiffs Bello-Lafrades and Brown are typical of the claims of the California Class as a whole. Defendants' unlawful wage policies and practices, which have operated to deny Bello-Lafrades and Brown timely payment of overtime premiums and other compensation, penalties, and protections required by law, are typical of the unlawful wage policies and practices that have and will continue to operate to deny other California Class Members lawful compensation.

58.    The claims of individual Plaintiffs Lederer and Pedro are typical of the claims of the California Waiting Time Sub-Class as a whole. Defendants' unlawful wage policies and practices, which have operated to deny Lederer and Pedro timely payment of all wages and compensation due upon separation as required by law, are typical of the unlawful wage policies and practices that have and will continue to operate to deny other employees lawful compensation.

59.    <u>Adequacy of Class Representation</u>. The individual Plaintiffs Bello-Lafrades and Brown can adequately and fairly represent the interests of the Class as defined above, because their individual interests are consistent with, not antagonistic to, the interests of the California Class.

60.    The individual Plaintiffs Lederer and Pedro can adequately and fairly represent the interests of the Sub-Class as defined above, because their individual interests are consistent with, not antagonistic to, the interests of the California Waiting Time Sub-Class.

61.    <u>Adequacy of Counsel for the Class</u>. Counsel for Plaintiffs Bello-Lafrades, Brown,

1    Lederer, and Pedro have the requisite resources and ability to prosecute this case as a class

2    action and are experienced labor and employment and class action attorneys who have successfully

3    litigated other cases involving similar wage and hour issues, including on a class action basis.

4        62.    <u>Propriety of Class Action Mechanism</u>. This suit is properly maintainable as a class

5    action under Federal Rule of Civil Procedure 23 because Defendants have implemented a series of

6    unlawful schemes that are generally applicable to the Class, making it appropriate to issue final

7    injunctive relief and corresponding declaratory relief with respect to the Class as a whole. This suit is

8    also properly maintainable as a class action because the common questions of law and fact

9    predominate over any questions affecting only individual members of the Class. Prosecution of

10   separate actions by the individual California Class Members would create a risk of varying

11   adjudications with respect to those individuals, which would establish incompatible standards of

12   conduct for the Defendants. For all these and other reasons, a class action is superior to other available

13   methods for the fair and efficient adjudication of the controversy set forth in this Complaint.

<b><u>GENERAL FACTUAL ALLEGATIONS</u></b>

14

15   **<u>Regular Rate Calculation for Overtime Compensation</u>**

16       63.    Regular Rate Plaintiffs are each a natural person who was employed by Defendants in

17   a non-exempt hourly position to perform work related to the processing of raw sugar into refined

18   sugar within the state of California between July 29, 2017, and June 28, 2018.

19       64.    During that time, Regular Rate Plaintiffs' hours, wages, and other terms and conditions

20   of employment were in part governed by a collective bargaining Memorandum of Agreement between

21   Sugar Workers Union 1 and C&H Sugar Company, Inc. effective July 27, 2017 to May 31, 2022

22   ("2017 MOA"). Regular Rate Plaintiffs were paid hourly according to a wage scale that is

23   incorporated into the 2017 MOA.

24       65.    2017 MOA section 10(A) guaranteed a shift differential to employees who worked a

25   swing or night shift. The swing shift entitled an employee to a $0.40 per hour premium.  An employee

26   who worked the night shift was entitled to receive a $0.60 per hour premium.  That section also

27   guaranteed that the shift differential would be included as part of the hourly rate for the purpose of

28   calculating overtime wages.

66.     In workweeks in which Regular Rate Plaintiffs worked beyond 40 hours, Defendants excluded the shift differential from the regular rate for the purposes of overtime compensation. On information and belief, Defendants, individually or collectively have never sought an opinion from the United States Department of Labor ("DOL") whether this practice of exclusion was lawful for the purposes of the FLSA compliance.

67.     Another term of the 2017 MOA, under section 6(C)(3), provided a payment of either $50 or $100 per week to certain employees to coordinate the scheduling of overtime shifts and create/maintain records of this for Defendants. Regular Rate Plaintiffs have received payments for performing these duties. However, this payment was not included in the regular rate of pay for the purposes of determining overtime compensation. On information and belief, Defendants, individually or collectively have never sought an opinion from the DOL whether the practice of exclusion of overtime was lawful for the purposes of FLSA compliance.

68.     Under the 2017 MOA, Regular Rate Plaintiffs had the opportunity to receive multiple lump sum bonuses. For example, under the 2017 MOA, Regular Rate Plaintiffs were eligible to receive an annual Christmas Award. To be eligible, employees needed to satisfy the condition of maintaining their employment with Defendants to December 1st of the year to earn the award. 2017 MOA section 2(C) set forth a specific equation for the calculation of this award. Under the 2017 MOA, Defendants had no discretion to decide whether a Christmas Award was to be paid or to modify the amount determined by the calculation methodology in the 2017 MOA.

69.     When Defendants made Christmas Award payments to Regular Rate Plaintiffs, they treated this payment as compensation for the purposes of tax withholdings. When Defendants issued the Christmas Award to Regular Rate Plaintiffs, they did not retroactively recalculate the regular rate of pay over the prior year to include this payment in the determination of the regular rate and issue to Regular Rate Plaintiffs the unpaid overtime based on the new rate. On information and belief, Defendants, individually or collectively have never sought an opinion from the DOL whether the practice of exclusion of Christmas Award payments from the regular rate was lawful for the purposes of FLSA compliance.

70.     Employees covered by the 2017 MOA were entitled to receive an Attendance

Incentive payment based on the number of times he or she called in sick within the year, under Exhibit G of the MOA. At the close of the bonus period, a pool of money set aside for this bonus was distributed to employees based on the number of absences they had. The less absences, the greater the payment. Defendants treated Attendance Incentive payments as compensation for the purposes of tax withholdings. Further, when Defendants made Attendance Incentive payments, Defendants did not recalculate the regular rate of pay to include these payments and pay all overtime that was earned but unpaid based on the new rate to those recipients.  On information and belief, Defendants, individually or collectively have never sought an opinion from the DOL whether the practice of exclusion of Attendance Incentive payments from the regular rate was lawful for the purposes of FLSA compliance.

71.    2017 MOA section 11 provided employees a meal allowance of $5.00 if they were required to work two hours extra before or after their shift than originally scheduled. When Regular Rate Plaintiffs earned this allowance, Defendants treated it as compensation for the purposes of tax withholdings. When Regular Rate Plaintiffs earned this allowance, they did not incur any expense at Defendant's convenience. When Regular Rate Plaintiffs were paid meal allowance wages, Defendants did not factor it into their regular rate for the purposes of determining overtime compensation due when they worked beyond 40 hours. On information and belief, Defendants, individually or collectively have never sought an opinion from the DOL whether the practice of exclusion of meal allowance payments from the regular rate was lawful for the purposes of the FLSA compliance.

72.    When Defendants paid Regular Rate Plaintiffs overtime compensation, they only paid them at 1.5 times their hourly rate of pay (excluding the aforementioned items of extra compensation from the regular rate) for all hours worked above 40.

73.    Defendants amended their pay practices on June 28, 2018 to begin including the above items of extra compensation in the regular rate for the purposes of determining overtime compensation.

74.    Effective July 29, 2020, Defendants entered a tolling agreement with Regular Rate Plaintiffs for any claims related to regular rate calculations. FLSA claims have a three-year statute of

1    limitations. Therefore, the relevant time period for the regular rate claims is July 29, 2017 to June 28,

2    2018 ("Regular Rate Period").

3    **Compensation for Pre-Shift and Post-Shift Duties**

4    75.    Plaintiff Bello-Lafrades is a non-exempt employee of Defendants. His duties primarily

5    include manual labor in the processing of raw sugar into refined sugar and related activities thereof.

6    76.    Bello-Lafrades performs these duties primarily at Defendants' processing facility

7    located in Crockett, California.

8    77.    Bello-Lafrades' hours, wages, and other terms and conditions of employment are in

9    part governed by a collective bargaining agreement between Sugar Workers Union 1 and C&H Sugar

10    Company, Inc. For part of the relevant time period herein, the terms and conditions of employment

11    were governed by the 2017 MOA, and then by a Memorandum of Agreement effective June 29, 2022

12    to May 31, 2025 ("2022 MOA"). The relevant terms did not change between the two versions so they

13    will collectively be referred to herein as the MOA. Bello-Lafrades is paid hourly according to a wage

14    scale that is incorporated into the MOA.

15    78.    MOA Section 3(B) defines a "day" as the 24-hour period from 11:01 PM to 11:01 PM.

16    A 24-hour workday schedule is divided into three shifts: 11:00 PM – 7:00 AM, 7:00 AM – 3:00 PM,

17    and 3:00 PM – 11:00 PM. MOA § 10(A)(1). During each 8-hour work shift, employees receive a 30-

18    minute lunch period. MOA § 3(C). Therefore, each "Scheduled Work Shift" is eight and one-half (8

19    ½) hours.

20    79.    Bello-Lafrades regularly works five Scheduled Work Shifts per week, totaling a 40-

21    hour workweek.

22    80.    Bello-Lafrades is paid wages once a week by American Sugar Refining, Inc. as

23    "payor" for C&H Sugar Company, Inc.

24    81.    As part of Defendants' standard work policies, when Bello-Lafrades arrives at the

25    processing facility, but before he can go to his workstation, he must first enter a specified area referred

26    to by employees as the "Boot Room." In the Boot Room, Bello-Lafrades puts on personal protective

27    equipment ("PPE"), including a hairnet, hard hat, boots, and goggles. After donning the PPE, Bello-

28    Lafrades must thoroughly wash his hands. He then leaves the Boot Room to walk to his workstation.

1    The activities described in this paragraph will herein be referred to as "Pre-Shift Duties." Every
2    workday, Pre-Shift Duties take, on average, 15-20 minutes to complete.

3        82.    The workday for Bello-Lafrades ends after he discusses the work status with his relief
4    co-worker, walks back to the Boot Room, removes his PPE, and thoroughly washes his hands before
5    leaving the facility. The activities described in this paragraph will herein be referred to as "Post-Shift
6    Duties." Every workday, Post-Shift Duties take, on average, 5-10 minutes to complete.

7        83.    The Pre-Shift Duties and Post-Shift Duties are mandated by Defendants' work policies
8    for safety purposes including preventing food contamination and avoiding workplace injuries. Thus,
9    these activities are integral and indispensable to the principal work duties and are compelled by the
10   necessities of the employer's business. They are performed during the time Bello-Lafrades is subject
11   to Defendants' control and suffered or permitted to work with Defendants' knowledge.

12       84.    Prior to approximately January 1, 2024, Bello-Lafrades was required to clock-in when
13   he entered the facility, before performing his Pre-Shift Duties. Bello-Lafrades was expected to be at
14   his workstation, ready to perform his principal work, at the beginning of his Scheduled Work Shift.
15   Therefore, every workday, Bello-Lafrades clocked-in approximately 15-20 minutes earlier than the
16   start of his Scheduled Work Shift.

17       85.    Prior to approximately January 1, 2024, Bello-Lafrades was expected leave his
18   workstation at the end of his Scheduled Work Shift, then perform his Post-Shift Duties, and then
19   clock-out when leaving the facility. Therefore, every workday, Bello-Lafrades clocked-out
20   approximately 5-10 minutes later than the end of his Scheduled Work Shift.

21       86.    Prior to approximately January 1, 2024, Defendants employed a pay practice which
22   rounded Bello-Lafrades' work hours down. If Bello-Lafrades clocked-in up to 30 minutes before his
23   Scheduled Work Shift, his compensable work hours would be rounded down to the start of that shift.
24   For example, if his Scheduled Work Shift began at 8:00 AM, and he clocked-in at 7:45 AM, he would
25   only start getting paid at 8:00 AM. Similarly, if Bello-Lafrades clocked-out up to 30 minutes after his
26   Scheduled Work Shift, his compensable work hours would be rounded down to the end of that shift.
27   For example, if his Scheduled Work Shift ended at 3:30 PM, and he clocked-out at 3:45 PM, he would
28   only get paid until 3:30 PM. This practice will herein be referred to as Defendants' "Rounding

Practice."

87.    Defendants' Rounding Practice resulted in Bello-Lafrades not getting paid for performing his Pre-Shift Duties and Post-Shift Duties, even though he was clocked-in during that time.

88.    On information and belief, Defendants, individually or collectively, have never sought an opinion from the DOL about whether the Rounding Practice was lawful for the purposes of FLSA compliance.

89.    Beginning on or around January 1, 2024, Defendants stopped using the Rounding Practice. Defendants now compensate Bello-Lafrades for all hours when he is clocked-in.

90.    Also beginning on or around January 1, 2024, Defendants moved the timeclocks from the plant entrance to individuals' workstations. Bello-Lafrades is now required to clock-in at the beginning of his Scheduled Work Shift once he arrives at his workstation, after performing his Pre-Shift Duties. Bello-Lafrades is required to clock-out when he leaves his workstation at the end of his Scheduled Work Shift, before performing his Post-Shift Duties.

91.    Defendants' present and ongoing timekeeping practice results in Bello-Lafrades not getting paid for performing his Pre-Shift Duties and Post-Shift Duties because he is not clocked-in during that time.

92.    On information and belief, Defendants, individually or collectively, have never sought an opinion from the DOL about whether Pre-Shift Duties and Post-Shift Duties are compensable time for the purposes of the FLSA compliance.

93.    On information and belief, paragraphs 63-80 similarly apply to all Off-the-Clock Plaintiffs, Collective Action Members, and California Class Members in relation to shift schedules, pre- and post- shift duties, and Defendants' timekeeping practices. Although Plaintiff Brown, the Warehouse Collective Action Members, and the Warehouse California Class Members, and Off-the-Clock Plaintiffs employed in the warehouse are parties to a different collective bargaining agreement, one between the International Longshore and Warehouse Union, Local 6 and C&H Sugar Company, Inc., the same typical work schedules, pre- and post-shift duties, rounding and overtime policies, and compensation methods apply.

94.     Pursuant to the notice requirements of the California Private Attorneys General Act (Cal. Labor Code section 2698 *et seq.*, "PAGA"), Plaintiffs dispatched notice detailing the foregoing violations via certified mail to the Defendants and the California Labor Workforce and Development Agency ("LWDA") on March 13, 2024, for the Sugar Processing California Class Members, and on May 20, 2024 for the Warehouse California Class Members. The LWDA has declined to communicate their intent to investigate the allegations set forth in those notices.

<u>**FIRST CLAIM FOR RELIEF**</u>

**Violations of the Fair Labor Standards Act**

**[29 U.S.C. 201 *et. seq.*]**

**(Brought by Regular Plaintiffs Against all Defendants)**

95.     Regular Rate Plaintiffs re-allege and incorporate by reference all previous paragraphs.

96.     Regular Rate Plaintiffs bring this claim in their individual capacities, not as a collection action.

97.     Regular Rate Plaintiffs were employed by Defendants between July 29, 2017 and June 28, 2018.

98.     29 U.S.C 207 guarantees to non-exempt employees overtime compensation at one and half times their regular rate of pay for all hours worked beyond 40 in a workweek.

99.     Pursuant to 29 U.S.C. section 207(e), the "regular rate" must include all remuneration received by an employee unless it is explicitly excluded. The burden is on an employer to demonstrate that a payment is excludable from the regular rate. *Madison v. Resources for Human* Development, 233 F.3d 175, 187 (3rd. Cir. 2000). Further, pursuant to 29 CFR section 778.106, an employer is required to pay all overtime compensation by the following pay period's pay date.

100.     Regular Rate Plaintiffs were non-exempt hourly employees entitled to overtime compensation pursuant to 29 USC section 207.

101.     Defendant caused Regular Rate Plaintiffs to regularly work beyond 40 hours in a workweek.

102.     29 CFR section 778.207(b) "requires the inclusion in the regular rate of such extra premiums as nightshift differentials (whether they take the form of a percent of the base rate or an

1  addition of so many cents per hour) and premiums paid for hazardous, arduous or dirty work."

2  103.    During the Regular Rate Period, in workweeks in which Regular Rate Plaintiffs

3  worked beyond 40 hours, Defendants excluded the shift differential earned from the calculation of

4  the regular rate for the purposes of determining overtime compensation.

5  104.    29 CFR section 778.211(b) states in part that a payment is only excluded from the

6  calculation of the regular rate if the "employer must retain discretion both as to the fact of payment

7  and as to the amount until a time quite close to the end of the period for which the bonus is paid. The

8  sum, if any, to be paid as a bonus is determined by the employer without prior promise or agreement.

9  The employee has no contract right, express or implied, to any amount. If the employer promises in

10  advance to pay a bonus, he has abandoned his discretion with regard to it." "Obviously, if the bonus

11  is paid pursuant to contract (so that the employee has a legal right to the payment and could bring suit

12  to enforce it), it is not in the nature of a gift." 29 CFR 778.212(b).

13  105.    Once the bonus is paid, an employer is required to retroactively recalculate the regular

14  rate for each workweek in the bonus period and pay to the employee all earned but unpaid overtime

15  based on the new rate pursuant to 29 CFR section 778.209.

16  106.    During the Regular Rate Period, Regular Rate Plaintiffs were eligible to receive a

17  Christmas Award pursuant to the 2017 MOA. That payment was contingent upon an employee

18  maintaining employment with Defendants to December 1st. Further, that payment was calculated

19  according to an equation set forth in the 2017 MOA. When Regular Rate Plaintiffs earned the

20  Christmas Award payment or other bonuses, Defendants did not retroactively recalculate the regular

21  rate or issue any earned but unpaid overtime wages due based on the new regular rate.

22  107.    29 CFR section 778.211(c) states in part, "Bonuses which are announced to employees

23  to induce them to work more steadily or more rapidly or more efficiently or to remain with the firm

24  are regarded as part of the regular rate of pay. Attendance bonuses, individual or group production

25  bonuses, bonuses for quality and accuracy of work, bonuses contingent upon the employee's

26  continuing in employment until the time the payment is to be made and the like are in this category.

27  They must be included in the regular rate of pay."

28  108.    During the Regular Rate Period, Regular Rate Plaintiffs earned a $50 or $100 payment

1   pursuant to the 2017 MOA for performing duties related to the scheduling and staffing of overtime

2   shifts.  However, when Regular Rate Plaintiffs received that payment, it is not factored into their

3   regular rates for the purposes of determining overtime compensation when they worked beyond 40

4   hours in a workweek.

5          109.    The DOL Opinion Letter FLSA2009-19, and opinions issued in *Acton v. City of*

6   *Columbia*, 436 F.3f 969 (8th Cir. 2006) and *Chavez v. City of Albuquerque*, 630 F.3d 1300 (10th Cir.

7   2011) concluded that bonuses which induce an employee to attend work more regularly and/or refrain

8   from the use of sick leave are includable in the regular rate of pay for the purpose of determining

9   overtime compensation due under the FLSA.

10         110.    During the Regular Rate Period, Regular Rate Plaintiffs were eligible to receive an

11  Attendance Incentive payment based on the number of times they called in sick within the year. That

12  bonus was distributed from a pool of money based on the number of absences employees had.

13  Defendants treated that payment as compensation for the purposes of tax withholdings. Once the

14  Attendance Incentive was paid, Defendants did not recalculate the regular rate of pay and pay all

15  overtime that had been earned but unpaid based on the new rate.

16         111.    29 CFR section 778.217(d) states in part, for payments for expenses personal to the

17  employee, "[t]he expenses for which reimbursement is made must in order to merit exclusion from

18  the regular rate under this section, be expenses incurred by the employee on the employer's behalf or

19  for his benefit or convenience. If the employer reimburses the employee for expenses normally

20  incurred by the employee for his own benefit, he is, of course, increasing the employee's regular rate

21  thereby. An employee normally incurs expenses in traveling to and from work, buying lunch, paying

22  rent, and the like. If the employer reimburses him for these normal everyday expenses, the payment

23  is not excluded from the regular rate as 'reimbursement for expenses.' Whether the employer

24  'reimburses' the employee for such expenses or furnishes the facilities (such as free lunches or free

25  housing), the amount paid to the employee (or the reasonable cost to the employer or fair value where

26  facilities are furnished) enters into the regular rate of pay."

27         112.    The FLSA prohibits an employer from excluding per diems paid pursuant to 29 CFR

28  section 778.217 if it is tied to the number of hours an employee works in a day.  *Newman v. Advanced*

*Tech. Innovation Corp.*, 749 F.3d 33, 39 (1st Cir. 2014); *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1042 (5th Cir. 2010).

113.    During the Regular Rate Period, Regular Rate Plaintiffs were eligible to receive a meal allowance of $5.00 if they were required to work two hours extra before or after their shift than originally scheduled. When Regular Rate Plaintiffs earned that allowance, Defendants treated it as compensation for the purposes of tax withholdings. When Regular Rate Plaintiffs earned that allowance, they did not incur any expense at Defendants' convenience.  When Regular Rate Plaintiffs were paid meal allowance wages, Defendants did not include it in the regular rate for the purposes of overtime compensation.

114.    Defendants had a common policy of only paying one and one-half times an employee's base rate for all hours worked beyond 40 in a workweek.

115.    Based on the foregoing, Regular Rate Plaintiffs have not received all overtime compensation to which they are entitled under the FLSA.

116.    At all times relevant hereto, Defendants knew or should have known of their obligations to pay Regular Rate Plaintiffs overtime compensation at one and one-half times their regular rate of pay for all hours worked in excess of 40.

117.    Defendants' failure to fully compensate Regular Rate Plaintiffs for all hours worked during the Regular Rate Period was not in good faith, and was a willful violation of the FLSA.

118.    As a result of the violations of the FLSA alleged herein, Regular Rate Plaintiffs seek damages for lost overtime compensation throughout the Regular Rate Period (July 29, 2017 to June 28, 2018, pursuant to the three-year statute of limitations under the FLSA and the parties' tolling agreement), as well as liquidated damages, reasonable attorney fees, and costs pursuant to 29 U.S.C. section 216(b).

///

///

///

///

///

**SECOND CLAIM FOR RELIEF**

**Violations of the Fair Labor Standards Act**

**[29 U.S.C. 201 *et. seq.*]**

**(Brought by Off-the-Clock Plaintiffs on Behalf of Collective Action Members Against**

**Defendants)**

119.    Off-the-Clock Plaintiffs, on behalf of themselves and Collective Action Members, re-allege and incorporate by reference all previous paragraphs.

120.    Collective Action Members are, or were, employed by Defendants within the last three (3) years.

121.    29 U.S.C section 207 guarantees to non-exempt employees overtime compensation at one and half times their regular rate of pay for all hours worked beyond 40 in a workweek.

122.    From the beginning of the Collective Action Period until on or around January 1, 2024, Defendants employed a Rounding Practice which systematically under-compensated employees for earned overtime. Under the policy, if employees clocked-in up to 30 minutes before, and/or clocked-out up to 30 minutes after a Scheduled Work Shift, the compensable hours were rounded down to align with the Scheduled Work Shift. On information and belief, the same is true for all Collective Action Members.

123.    29 C.F.R. section 785.48(b), "'Rounding' practices" states, "[f]or enforcement purposes [a rounding practice] will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked." In other words, a rounding practice must be neutral in rounding up or down to a nearest specified segment of time.

124.    Defendants' rounding practice violated 29 C.F.R. section 785.48 because it was not neutral; it only rounded work hours down. The practice resulted in the systematic failure to pay overtime for recurrent work before and after each shift.

125.    Defendants' Rounding Practice did not compensate Collective Action Members for the omitted rounded time. Because Collective Action Members are/were regularly scheduled for 40-hour workweeks, and the rounded time was, by definition, supplemental to the Scheduled Work

1    Shifts, the Rounding Practice resulted in systematic non-payment of overtime compensation.

2    126.    Defendants' policies violated the FLSA by utilizing a prohibited rounding practice and

3    by failing to pay employees for all overtime hours worked.

4    127.    At all times relevant hereto, Defendants knew or should have known of the prohibition

5    on one-sided rounding practices.

6    128.    Defendants' failure to fully compensate Collective Action Members for all hours

7    worked during the Collective Action Period was not in good faith, and was a willful violation of the

8    FLSA.

9    129.    As a result of the violations of the FLSA alleged herein, Off-the-Clock Plaintiffs, on

10    behalf of themselves and all other similarly situated individuals of the Collective Action, seek

11    damages for lost overtime compensation during the three-year limitations period, as well as liquidated

12    damages, reasonable attorney fees, and costs pursuant to 29 U.S.C. section 216(b).

13    **THIRD CLAIM FOR RELIEF**

14    **Violations of the Fair Labor Standards Act**

15    **[29 U.S.C. 201 *et. seq.*]**

16    **(Brought by Off-the-Clock Plaintiffs on Behalf of Collective Action Members Against**

17    **Defendants)**

18    130.    Off-the-Clock Plaintiffs, on behalf of themselves and Collective Action Members, re-

19    allege and incorporate by reference all previous paragraphs.

20    131.    29 U.S.C section 207 guarantees to non-exempt employees overtime compensation at

21    one and half times their regular rate of pay for all hours worked beyond forty (40) in a workweek.

22    132.    Since approximately January 1, 2024, Collective Action Members are required to

23    clock-in when they arrive at their workstations, after performing Pre-Shift Duties. Collective Action

24    Members are required to clock-out when they leave their workstations, before performing Post-Shift

25    Duties. On information and belief, the same is true for all Collective Action Members.

26    133.    "[A]ctivities performed either before or after the regular work shift, on or off the

27    production line, are compensable under . . . the Fair Labor Standards Act if those activities are an

28    integral and indispensable part of the principal activities" for which the workers are employed. *Steiner*

*v. Mitchell*, 350 U.S. 247 (1956).

134.    "To be 'integral and indispensable,' an activity must be necessary to the principal work performed and done for the benefit of the employer." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902–03 (9th Cir. 2003), aff'd, 546 U.S. 21 (2005). "The test for principal activities and integral and indispensable parts of such activities is 'whether [the activities] are performed as part of the regular work of the employees in the ordinary course of business.'" *Ketchum v. City of Vallejo*, 523 F. Supp. 2d 1150, 1161 (E.D. Cal. 2007) (quoting *Dunlop v. City Elec., Inc.*, 527 F.2d 394, 401 (5th Cir.1976)).

135.    "[A]ny walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is" part of the employee's "continuous workday" and is compensable under the FLSA. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005).

136.    Collective Action Members' Pre-Shift Duties and Post-Shift Duties are mandated by Defendants and essential to the performance of their work duties; those activities are part of their continuous workday.

137.    The Pre-Shift Duties and Post-Shift Duties are integral and indispensable parts of the principal activities for which Collection Action Members are employed.

138.    The Pre-Shift Duties and Post-Shift Duties are necessary and part of the principal work performed and done for the benefit of the employer because they support sanitary conditions to prevent contamination and promote a safe work environment that prevents unnecessary workplace injury. *See e.g., Alvarez v. IBP, Inc.* (9th Cir. 2003) 339 F.3d 894, 903, aff'd, 546 U.S. 21 (2005) ("Plaintiffs' donning and doffing of job-related protective gear satisfies [the U.S. Supreme Court's] bipartite 'integral and indispensable' test.").

139.    Collective Action Members are not covered by collective bargaining agreements that expressly provide that time spent performing Pre-Shift Duties and Post-Shift Duties is non-compensable.

140.    For the foregoing reasons, time spent performing Pre-Shift Duties and Post-Shift Duties is compensable under the FLSA.

141.    Since approximately January 1, 2024, Defendants' employment policy of clocking-in

and clocking-out at the workstation results in non-payment of time spent performing Pre-Shift Duties and Post-Shift Duties.

142.    Because Pre-Shift Duties and Post-Shift Duties are performed outside of Schedule Worked Shifts, their exclusion from compensable time results in systematic non-payment of overtime compensation for Collective Action Members who regularly work beyond 40 hours in a workweek.

143.    At all times relevant hereto, Defendants knew or should have known that time spent performing Pre-Shift Duties and Post-Shift Duties is compensable time under the FLSA.

144.    Defendants' failure to fully compensate Collective Action Members for all hours worked during the Collective Action Period was not in good faith, and was a willful violation of the FLSA.

145.    As a result of the violations of the FLSA alleged herein, Off-the-Clock Plaintiffs, on behalf of themselves and all other similarly situated individuals of the Collective Action, seek damages for lost overtime compensation during the three-year limitations period, as well as liquidated damages, reasonable attorney fees, and costs pursuant to 29 U.S.C. section 216(b).

## FOURTH CLAIM FOR RELIEF

### Failure to Pay Minimum Wage

**[Cal. Labor Code §§ 221, 222, 223, 1182.12, and 1197; IWC Wage Order No. 1-2001 § 4]**

**(Brought by Bello-Lafrades and Brown, on behalf of themselves and the California Class, Against all Defendants)**

146.    Plaintiffs Bello-Lafrades and Brown, on behalf of themselves and California Class Members, re-allege and incorporate by reference all previous paragraphs.

147.    Plaintiffs Bello-Lafrades and Brown, and California Class Members are, or were, employed by the Defendant within the last four (4) years.

148.    California Labor Code sections 1182.12 and 1197 and IWC Wage Order 1-2001 section 4 mandate payment of the minimum wage to all employees within the State of California for all hours worked.

149.    California Labor Code sections 221, 222, and 223 ensure that all hours must be paid at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage

1    obligation. "For all hours worked, employees are entitled to the greater of the (1) amount guaranteed

2    by contract for the specified task or period, or (2) the amount guaranteed by the minimum wage."

3    *Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762, 782 (2020).

4          150.    From the beginning of the California Class Period until on or around January 1, 2024,

5    Defendants employed a Rounding Practice by which, if Bello-Lafrades or Brown clocked-in up to 30

6    minutes before, or clocked-out up to 30 minutes after his Scheduled Work Shift, his compensable

7    hours were rounded down to align with his Scheduled Work Shift. On information and belief, the

8    same is true for all California Class Members.

9          151.    While "there is no California statute or case law specifically authorizing or

10    prohibiting" time-rounding practices, "the federal/DLSE standard is the appropriate standard." *See's*

11    *Candy Shops, Inc. v. Superior Ct.* 210 Cal.App.4th 889, 901 (2012). Under the federal standard, a

12    rounding practice must be neutral in rounding up or down to a nearest specified segment of time. *See*

13    29 C.F.R. section 785.48(b).

14          152.    Defendants' rounding practice violated 29 C.F.R. section 785.48, and by extension

15    California law, because it was not neutral; it only rounded work hours down.

16          153.    The California Labor Code "contemplates that employees will be paid for all work

17    performed." *Troester v. Starbucks Corp.*, 5 Cal. 5th 829, 840 (2018), as modified on denial of reh'g

18    (Aug. 29, 2018).

19          154.    Defendants' pay policies did not compensate for the omitted rounded time resulting in

20    Defendants' failure to pay California Class Members minimum wage for all hours worked.

21          155.    At all times relevant hereto, Defendants knew or should have known of the prohibition

22    on one-sided rounding practices.

23          156.    Defendants' failure to fully compensate California Class Members for all hours

24    worked during the California Class Period was not in good faith, and was a willful violation of the

25    California Labor Code and IWC Wage Orders.

26          157.    As a result of the violations of California law alleged herein, Bello-Lafrades and

27    Brown, on behalf of themselves and all other similarly situated individuals of the California Class,

28    seek damages for lost compensation, interest, reasonable attorney fees, costs, and penalties.

**FIFTH CLAIM FOR RELIEF**

**Failure to Pay Minimum Wage**

**[Cal. Labor Code §§ 221, 222, 223, 1182.12, and 1197; IWC Wage Order No. 1-2001 § 4]**

**(Brought by Bello-Lafrades and Brown, on behalf of themselves and the California Class,**

**Against all Defendants)**

158.    Plaintiffs Bello-Lafrades and Brown, on behalf of themselves and California Class Members, re-allege and incorporate by reference all previous paragraphs.

159.    California Labor Code sections 1182.12 and 1197 and IWC Wage Order 1-2001 section

4 mandate payment of the minimum wage to all employees within the State of California for all hours worked.

160.    California Labor Code sections 221, 222, and 223 ensure that all hours must be paid at the statutory or agreed rate and no part of this rate may be used as a credit against a minimum wage obligation. "For all hours worked, employees are entitled to the greater of the (1) amount guaranteed by contract for the specified task or period, or (2) the amount guaranteed by the minimum wage." *Oman, supra*, 9 Cal. 5th at 782.

161.    Since approximately January 1, 2024, Bello-Lafrades and Brown are required to clock-in when they arrive at their workstations, after performing Pre-Shift Duties. Bello-Lafrades and Brown are required to clock-out when they leave their workstations, before performing Post-Shift Duties. On information and belief, the same is true for all California Class Members.

162.    The time Bello-Lafrades, Brown, and California Class Members spend performing Pre-Shift Duties and Post-Shift Duties is compensable time under California law.

163.    "Time spent changing clothes or washing up on the employer's premises is compensable if it is compelled by the necessities of the employer's business." Division of Labor Standards Enforcement ("DLSE") Enforcement Manual § 46.6.1.

164.    The Pre-Shift Duties and Post-Shift Duties performed by Bello-Lafrades, Brown, and California Class Members are necessary and part of the principal work performed and done for the benefit of the employer because they support sanitary conditions to prevent contamination and

promote a safe work environment that prevents unnecessary workplace injury.

165.    "[A]n employee who is subject to the control of an employer does not have to be working during that time to be compensated under the applicable wage order. [Citation.] Likewise, an employee who is suffered or permitted to work does not have to be under the employer's control to be compensated, provided the employer has or should have knowledge of the employee's work." *Frlekin v. Apple Inc.*, 8 Cal. 5th 1038, 1046 (2020).

166.    During the time Bello-Lafrades, Brown, and California Class Members perform Pre-Shift Duties and Post-Shift Duties, they are subject to the control of Defendants and are suffered or permitted to work with Defendants' knowledge. Therefore, the time Bello-Lafrades, Brown, and

California Class Members spend performing Pre-Shift Duties and Post-Shift Duties is compensable time under California law.

167.    Since approximately January 1, 2024, Defendants' employment policy of clocking-in and clocking-out at the workstations results in non-payment for time spent performing Pre-Shift Duties and Post-Shift Duties, resulting in Defendants' failure to pay Bello-Lafrades, Brown, and California Class Members minimum wage for all hours worked.

168.    At all times relevant hereto, Defendants knew or should have known that time spent performing Pre-Shift Duties and Post-Shift Duties is compensable under California law.

169.    Defendants' failure to fully compensate Bello-Lafrades, Brown, and California Class Members for all hours worked during the California Class Period was not in good faith, and was a willful violation of the California Labor Code and IWC Wage Orders.

170.    As a result of the violations of California law alleged herein, Bello-Lafrades and Brown, on behalf of themselves and all other similarly situated individuals of the California Class, seek damages for lost compensation, interest, reasonable attorney fees, costs, and penalties.

///

///

///

///

///

**SIXTH CLAIM FOR RELIEF**

**Failure to Pay Overtime Wages**

**[Cal. Labor Code § 510; IWC Wage Order No. 1-2001 § 3]**

**(Brought by Bello-Lafrades and Brown, on behalf of themselves and the California Class,**

**Against all Defendants)**

171.    Plaintiffs Bello-Lafrades and Brown, on behalf of themselves and California Class Members, re-allege and incorporate by reference all previous paragraphs.

172.    California Labor Code section 510 and Industrial Wage Order 1-2001 section 3 guarantee to non-exempt employees overtime compensation at one and half times their regular rate of pay for all hours worked in excess of eight (8) hours in one day, or 40 hours in one week.

173.    From the beginning of the California Class Period until on or around January 1, 2024, Defendants employed a Rounding Practice by which, if Bello-Lafrades or Brown clocked-in up to 30 minutes before, or clocked-out up to 30 minutes after his scheduled work shift, his compensable hours were rounded down to align with his scheduled work shift. On information and belief, the same is true

for all California Class Members.

174.    Under California law, a rounding practice must be neutral in rounding up or down to a nearest specified segment of time. *See* 29 C.F.R. section 785.48(b); *See's Candy Shops, Inc. v. Superior Ct.* 210 Cal.App.4th 889, 901 (2012).

175.    Defendants' rounding practice violated 29 C.F.R. section 785.48, and by extension California law, because it was not neutral; it only rounded work hours down.

176.    Defendants' pay policies did not compensate for the omitted rounded time. Bello-Lafrades, Brown, and California Class Members were regularly scheduled to work eight hours in a workday and 40 hours in a workweek. Consequently, the exclusion of Pre-Shift Duties and Post-Shift Duties from compensable time resulted in systematic non-payment of overtime compensation.

177.    During the California Class Period, Defendants followed a policy and practice that violated California law by not properly compensating Bello-Lafrades, Brown, and California Class Members for all daily and weekly overtime hours worked.

178.   At all times relevant hereto, Defendants knew or should have known of the prohibition on one-sided rounding practices and the resulting failure to pay all overtime due to employees.

179.   Defendants' failure to fully compensate Bello-Lafrades, Brown, and California Class Members for all overtime hours worked during the California Class Period was not in good faith and was a willful violation of the California Labor Code and IWC Wage Orders.

180.   As a result of the violations of California law alleged herein, Bello-Lafrades and Brown, on behalf of themselves and all other similarly situated individuals of the California Class, seek damages for lost overtime compensation, interest, reasonable attorney fees, costs, and penalties.

<u>**SEVENTH CLAIM FOR RELIEF**</u>

**Failure to Pay Overtime Wages**

**[Cal. Labor Code § 510; IWC Wage Order No. 1-2001 § 3]**

**(Brought by Bello-Lafrades and Brown, on behalf of themselves and the California Class,**

**Against all Defendants)**

181.   Plaintiffs Bello-Lafrades and Brown, on behalf of themselves and California Class Members, re-allege and incorporate by reference all previous paragraphs.

182.   California Labor Code section 510 and Industrial Wage Order 1-2001 section 3 guarantee to non-exempt employees' overtime compensation at one and half times their regular rate of pay for all hours worked in excess of eight (8) hours in one day, or 40 hours in one week.

183.   Since approximately January 1, 2024, Bello-Lafrades and Brown are required to clock-in when they arrive at their workstations, after performing Pre-Shift Duties. Bello-Lafrades and Brown are required to clock-out when they leave their workstations, before performing Post-Shift Duties. On information and belief, the same is true for all California Class Members.

184.   "Time spent changing clothes or washing up on the employer's premises is compensable if it is compelled by the necessities of the employer's business." DLSE Enforcement Manual § 46.6.1.

185.   The Pre-Shift Duties and Post-Shift Duties performed by Bello-Lafrades, Brown, and California Class Members are necessary and part of the principal work performed and done for the benefit of the employer because they support sanitary conditions to prevent contamination and

1    promote a safe work environment that prevents unnecessary workplace injury.

2        186.    Compensable time includes time an employee is subject to the control of an employer

3    and time an employee is suffered or permitted to work with the employer's knowledge. *Frlekin*, *supra,*

4    8 Cal. 5th at 1046.

5        187.    During the time Bello-Lafrades, Brown, and California Class Members perform Pre-

6    Shift Duties and Post-Shift Duties, they are subject to the control of Defendants and are suffered or

7    permitted to work with Defendants' knowledge. Therefore, the time Bello-Lafrades, Brown, and

8    California Class Members spend performing Pre-Shift Duties and Post-Shift Duties is compensable

9    time under California law.

10        188.    Since approximately January 1, 2024, Defendants' employment policy of clocking-in

11    and clocking-out at the workstations results in non-payment of time spent performing Pre-Shift Duties

12    and Post-Shift Duties.

13        189.    Bello-Lafrades, Brown, and California Class Members are regularly scheduled eight

14    hours in a workday and 40 hours in a workweek. Consequently, the exclusion of Pre-Shift Duties and

15    Post-Shift Duties from compensable times results in systematic non-payment of overtime

16    compensation.

17        190.    At all times relevant hereto, Defendants knew or should have known that time spent

18    performing Pre-Shift Duties and Post-Shift Duties is compensable under California law.

19        191.    Defendants' failure to fully compensate Bello-Lafrades, Brown, and California Class

20    Members for all overtime hours worked during the California Class Period was not in good faith, and

21    was a willful violation California law.

22        192.    As a result of the violations of California law alleged herein, Bello-Lafrades and

23    Brown, on behalf of themselves and all other similarly situated individuals of the California Class,

24    seek damages for lost overtime compensation, interest, reasonable attorney fees, costs, and penalties.

25    ///

26    ///

27    ///

28    ///

## EIGHTH CLAIM FOR RELIEF

### Failure to Timely Pay All Wages When Due

### [Cal. Labor Code §§ 204, 210]

**(Brought by Bello-Lafrades and Brown, on behalf of themselves and the California Class, Against all Defendants)**

193. Plaintiffs Bello-Lafrades and Brown, on behalf of themselves and the California Class, re-allege and incorporate by reference all previous paragraphs.

194. California Labor Code section 204 requires an employer to pay all wages to its employees when those wages are due. This provision requires all wages be paid on at least a semi-monthly basis. Further, any wages earned for labor in excess of the normal work period must be paid no later than the following pay period's pay date.

195. California Labor Code section 210 provides that any person who fails to pay wages due to any employee in violation of section 204 shall be subject to a civil penalty of $100 for an initial violation for each failure to pay each employee, and a civil penalty of $200 for each subsequent violation or any willful or intentional violation for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

196. During the California Class Period, Bello-Lafrades, Brown, and California Class Members earned wages including but not limited to overtime compensation guaranteed by statute or contract, which they were never paid.

197. Defendants failed and continue to fail to pay these wages to Bello-Lafrades, Brown, and California Class Members.

198. Defendants' failure to timely pay these wages when due was willful and/or intentional.

199. As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Bello-Lafrades, Brown, and California Class Members have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial. Bello-Lafrades, Brown, and California Class Members are entitled to recover economic and statutory damages and penalties and other appropriate relief from Defendants' violations of the California Labor Code.

**<u>NINTH CLAIM FOR RELIEF</u>**

**Unlawful Withholding of Wages**

**[Cal. Labor Code §§ 221, 222, 223, 225.5]**

**(Brought by Bello-Lafrades and Brown, on behalf of themselves and the California Class,**

**Against all Defendants)**

200.    Plaintiffs Bello-Lafrades and Brown, on behalf of themselves and the California Class, re-allege and incorporate by reference all previous paragraphs.

201.    California Labor Code sections 221-223, collectively, prevent repayment of wages to an employer, withholding part of a wage, and failing to pay a wage less than mandated by a contract or statute.

202.    California Labor Code section 225.5 provides that every person who unlawfully withholds wages due to any employee in violation of section 223 shall be subject to a civil penalty of $100 for an initial violation for each failure to pay each employee, and a civil penalty of $200 for each subsequent violation or any willful or intentional violation for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld.

203.    During the California Class Period, Bello-Lafrades, Brown, and California Class Members earned wages including but not limited to overtime compensation guaranteed by statute or contract, which Defendants continue to unlawfully withhold.

204.    Defendants' unlawful withholding of these wages is willful and intentional.

205.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Bello-Lafrades, Brown, and California Class Members have sustained economic damages, including but not limited to unpaid wages and lost interest, in an amount to be established at trial. Bello-Lafrades, Brown, and California Class Members are entitled to recover economic and statutory damages and penalties and other appropriate relief from Defendants' violations of the California Labor Code.

///

///

///

### TENTH CLAIM FOR RELIEF

**Failure to Pay All Wages Due to Discharged and Quitting Employees**

**[Cal. Labor Code §§ 201, 202, 203]**

**(Brought by Lederer and Pedro, on behalf of themselves and the**

**California Waiting Time Sub-Class, Against all Defendants)**

206.    Plaintiffs Lederer and Pedro, on behalf of themselves and the California Waiting Time Sub-Class, re-allege and incorporate by reference all previous paragraphs.

207.    California Labor Code section 201 requires an employer who discharges an employee to pay all compensation due and owing to that employee immediately upon the employee's discharge from employment.

208.    California Labor Code section 202 requires an employer to promptly pay all compensation due and owing to an employee upon that employee's termination. An employer must pay final wages immediately if an employee is terminated or if the employee resigns with at least 72-hours' notice. If an employee quits or resigns without giving notice, the employer must make a final payment of wages within 72 hours.

209.    California Labor Code section 203 provides that if an employer willfully fails to pay all compensation due promptly upon discharge or resignation, as required by sections 201 and 202, the employers shall be liable for waiting time penalties equal to the employee's daily rate of pay for each day late, up to 30 days.

210.    By failing to compensate Lederer, Pedro, and California Waiting Time Sub-Class Members as required by California law, as set forth above, Defendants have willfully failed and continue to fail to pay all earned wages to discharged and quitting California Waiting Time Sub-Class Members in violation of California Labor Code sections 201 and 202.

211.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein, Lederer, Pedro, and California Waiting Time Sub-Class Members have sustained economic damages and are entitled to waiting time penalties calculated at each Sub-Class Member's daily rate of pay multiplied by the number of days that the employee was not paid, up to a maximum of 30 days, and statutory penalties.

**ELEVENTH CLAIM FOR RELIEF**

**Failure to Maintain Required Records**

**[Cal. Labor Code §§ 226, 1174, 1174.5, 1198; IWC Wage Order No. 1-2001 § 7]**

**(Brought by Bello-Lafrades and Brown, on behalf of themselves and the California Class,**

**Against all Defendants)**

212.    Plaintiffs Bello-Lafrades and Brown, on behalf of themselves and the California Class, re-allege and incorporate by reference all previous paragraphs.

213.    California Labor Code section 1174, subsections (c) and (d) require employers to keep records showing the names and addresses of all employees employed, and to keep, at a central location in the State of California or at the establishments at which employees are employed, payroll records showing the hours worked daily and the wages paid to all employees employed at the establishment.

214.    IWC Wage Order 1-2001 section 7(A)(3) further requires employers to keep time records showing when the employee begins and ends each work period and any meal periods. Under section 7(A)(5), employers must also record each employee's total hours worked and applicable rates of pay, and must make such information "readily available" to the employee upon request. Under section 7(C), all required records must be in the English language and in ink or other indelible form, properly dated, showing month, day, and year, and must be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California. Under both IWC Wage Order 1-2001 section 7(C) and California Labor Code section 226(b), all required records must be available for inspection by an employee upon reasonable request.

215.    California Labor Code section 1198 makes it unlawful to employ an employee under conditions prohibited by the IWC.

216.    Pursuant to Defendants' policies and practices, Defendants have willfully failed, and continue to willfully fail to maintain accurate, complete, and readily available records, in violation of California Labor Code section 1174 and IWC Wage Order 1-2001 section 7.

217.    Bello-Lafrades, Brown, and California Class Members have suffered and will continue to suffer actual economic harm resulting from these recordkeeping violations, as they have been, and will continue to be, precluded from accurately monitoring the wages to which they are entitled, have

1    been required to retain counsel and others to evaluate and calculate unpaid wages, and have suffered
2    delays in receiving the wages and interest that are due and owing to them. Defendants' ongoing
3    violations of these mandatory recordkeeping laws have caused, and will continue to cause, irreparable
4    harm to Bello-Lafrades, Brown, and California Class Members, because, among other reasons, as
5    long as Defendants fail to maintain the required records, Bello-Lafrades, Brown, and California Class
6    Members will be unable to determine the precise amount of wages and penalties owed to them for the
7    hours that Defendants have required, suffered, or permitted them to work.

8        218.    By willfully failing to maintain accurate and complete records required by California
9    Labor Code section 1174, subsections (c) and (d), Defendants are also liable for a civil penalty of
10   $500 for each violation under section 1174.5.

11                         **<u>TWELFTH CLAIM FOR RELIEF</u>**

12                 **Failure to Furnish Accurate Itemized Wage Statements**

13          **[Cal. Labor Code §§ 204, 226, 226.3; IWC Wage Order No. 1-2001, § 7]**

14      **(Brought by Bello-Lafrades and Brown, on behalf of themselves and the California Class,**

15                              **Against all Defendants)**

16       219.    Plaintiffs Bello-Lafrades and Brown, on behalf of themselves and the California Class,
17   re-allege and incorporate by reference all previous paragraphs.

18       220.    California Labor Code section 226(a) requires employers semimonthly or at the time
19   of each payment of wages to provide to their employees detailed wage and hour information including
20   but not limited to total hours worked, gross wages earned, and net wages earned.

21       221.    IWC Wage Order 1-2001 section 7(B) requires employers semimonthly or at the time
22   of each payment of wages to furnish to each employee an itemized statement in writing showing the
23   following information: all deductions; the inclusive dates of the period for which the employee is
24   paid; the name of the employee or the employee's social security number; and the name of the
25   employer.

26       222.    California Labor Code section 226(e) provides that an employee who suffers injury as
27   a result of a knowing and intentional failure by an employer to comply with section 226(a) may
28   recover the greater of actual damages or the civil penalties designated by statute of $50 for the initial

1  pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay
2  period, up to an aggregate maximum penalty of $4,000.

3      223.    California Labor Code section 226.3 provides that any employer who violates section
4  226(a) shall further be subject to a civil penalty of $250 per employee per violation in an initial citation
5  and $1,000 per employee for each violation in a subsequent citation for which the employer fails to
6  provide the employee a wage deduction statement or fails to keep the records required in section
7  226(a).

8      224.    California Labor Code section 1198 makes it unlawful to employ an employee under
9  conditions prohibited by the IWC.

10     225.    Pursuant to Defendants' unlawful policies and practices alleged herein, Defendants
11 have knowingly and intentionally failed to furnish Bello-Lafrades, Brown, and California Class
12 Members with the information required by California Labor Code section 226(a) and IWC Wage
13 Order 1-2001 section 7(B), including but not limited to total hours worked, gross wages earned, and
14 net wages earned.  This failure has injured, continues to injure, and was intended to injure Bello-
15 Lafrades, Brown, and California Class Members by, among other things, preventing them from
16 promptly and easily determining, or readily ascertaining the information without reference to other
17 documents or information.

18     226.    As a direct and proximate result of Defendants' unlawful conduct as alleged herein,
19 Bello-Lafrades, Brown, and California Class Members have sustained economic damages, including
20 but not limited to unpaid wages and lost interest, in an amount to be established at trial. Bello-
21 Lafrades, Brown, and California Class Members are entitled to recover such economic and statutory
22 damages and penalties and other appropriate relief from Defendants' violations of the California
23 Labor Code sections 226 and 226.3 and IWC Wage Order 1-2001 section 7(B).

24 ///
25 ///
26 ///
27 ///
28 ///

**THIRTEENTH CLAIM FOR RELIEF**

**California Labor Code Private Attorneys General Act**

**[Cal. Labor Code § 2698 *et seq.*]**

**(Brought by Bello-Lafrades and Brown on behalf of themselves, all aggrieved current and former employees, and the California Class Against all Defendants)**

227.    Plaintiffs Bello-Lafrades and Brown, on behalf of themselves and the California Class, re-allege and incorporate by reference all previous paragraphs.

228.    Under the California Labor Code Private Attorneys General Act, California Labor Code section 2698 *et seq.* ("PAGA"), any aggrieved employee may bring a representative action as a Private Attorney General on behalf of the general public, including all other aggrieved employees, to recover civil penalties for their employer's violations of the California Labor Code and IWC Wage Orders. These civil penalties are in addition to any other relief available under the Labor Code, and must be allocated 75 percent to the State of California's Labor and Workforce Development Agency and 25 percent to the aggrieved worker, pursuant to California Labor Code section 2699.

229.    Based on the foregoing information, Defendants' employment of Bello-Lafrades, Brown, and any California Class Member during the California Class Period is/was unlawful under the FLSA, California Labor Code, and IWC Order 1-2001, and is therefore actionable under PAGA.

230.    Bello-Lafrades and Brown allege, on behalf of themselves, all aggrieved current and former employees, and/or the California Class, as well as the general public of the State of California, that Defendants have violated the following provisions of the California Labor Code and the following provisions of the IWC Wage Orders that are actionable through the California Labor Code and PAGA, as previously alleged herein: California Labor Code sections 201, 202, 203, 204, 210, 221, 222, 223, 225.5, 226, 226.3, 558, 1174, 1174.5, 1182.12, 1194, 1197, and 1197.1, and IWC Wage Order 1-2001 sections 3, 4, and 7. Each of these violations entitles Bello-Lafrades and Brown, as a Private Attorneys General, to recover the applicable statutory civil penalties on their own behalf, on behalf of all aggrieved employees, and on behalf of the general public.

231.    California Labor Code section 2699(a), which is part of PAGA, provides in pertinent part: "Notwithstanding any other provision of law, any provision of this code that provides for a civil

penalty to be assessed and collected by the Labor and Workforce Development Agency or any of its

departments, divisions, commissions, boards, agencies, or employees, for a violation of this code, may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and other current or former employees pursuant to the procedures specified in Section 2699.3."

232.     California Labor Code section 2699(f), which is part of PAGA, provides in pertinent part: "For all provisions of this code except those for which a civil penalty is specifically provided, there is established a civil penalty for a violation of these provisions, as follows: . . .

"(2) If, at the time of the alleged violation, the person employs one or more employees, the civil penalty is one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation."

233.     Bello-Lafrades and Brown are entitled to civil penalties, to be paid by Defendants and allocated as PAGA requires, pursuant to California Labor Code section 2699(a) for Defendants' violations of the California Labor Code and IWC Wage Orders for which violations a civil penalty is already specifically provided by law. Bello-Lafrades and Brown are entitled to civil penalties, to be paid by Defendants and allocated as PAGA requires, pursuant to California Labor Code section 2699(f) for Defendants' violations of the California Labor Code and IWC Wage Orders for which violations a civil penalty is not already specifically provided.

234.     Pursuant to the notice requirements of the PAGA, Plaintiffs dispatched notice detailing the foregoing violations via certified mail to the Defendants and the LWDA on March 13, 2024 for the Sugar Processing California Class Members, and on May 20, 2024 for the Warehouse California Class Members. The LWDA has declined to communicate their intent to investigate the allegations set forth in this notice.

235.     Therefore, Bello-Lafrades and Brown have complied with all of the requirements set forth in California Labor Code section 2699.3 and are entitled to pursue a representative action under PAGA.

236.     Under PAGA, Bello-Lafrades, Brown, the California Class, and the State of California

1  are entitled to recover the maximum civil penalties permitted by law for the violations of the

2  California Labor Code and Wage Order 1-2001 that are alleged in this Complaint.

3                          **FOURTEENTH CLAIM FOR RELIEF**

4                        **Unfair and Unlawful Business Practices**

5                        **[Cal. Bus. & Prof. Code § 17200 *et seq.*]**

6  **(Brought by Bello-Lafrades and Brown, on behalf of themselves and the California Class,**

7                              **Against all Defendants)**

8        237.    Plaintiffs Bello-Lafrades and Brown, on behalf of themselves and the California Class,

9  re-allege and incorporate by reference all previous paragraphs.

10       238.    Defendants have engaged in unfair and unlawful business practices in violation of

11  California Business & Professions Code section 17200 *et seq.* by engaging in the unlawful conduct

12  alleged above, including but not limited to failure to pay for all hours worked and failure to pay all

13  overtime compensation due pursuant to the FLSA and the California Labor Code, failing to pay wages

14  promptly, failing to pay a wage designated by statute or contract and/or unlawfully

15  deducting/withholding such wages, and failing to provide employees information required by

16  California Labor Code sections 201, 202, 203, 204, 221, 222, 223, 226, 1174, 1182.12, 1194, and

17  1197, and IWC Wage Order 1-2001 sections 3, 4, and 7.

18       239.    Bello-Lafrades and Brown are informed and believe, and based upon such information

19  and belief, allege that by engaging in the unfair and unlawful business practices complained of above,

20  Defendants were able to lower their labor costs and thereby obtain a competitive advantage over law-

21  abiding employers with which they compete, in violation of California Business & Professions Code

22  section 17200 *et seq.* Defendants' conduct also violates California Labor Code section 90.5(a), which

23  sets forth the public policy of California to vigorously enforce minimum labor standards to ensure

24  that employees are not required or permitted to work under substandard and unlawful conditions and

25  to protect law-abiding employers and their employees from competitors that lower their costs by

26  failing to comply with minimum labor standards.

27       240.    As a direct and proximate result of Defendants' unfair and unlawful conduct as alleged

28  herein, Bello-Lafrades, Brown, and California Class Members have sustained injury and damages,

including unpaid wages and lost interest, in an amount to be established at trial. Bello-Lafrades, Brown, and California Class Members seek restitution of all unpaid wages owed to them, disgorgement of all profits that Defendants have enjoyed as a result of their unfair and unlawful business practices, penalties, and injunctive relief.

**FIFTEENTH CLAIM FOR RELIEF**

**Declaratory Judgment**

**[28 U.S.C § 2201, Cal. Code of Civil Procedure § 1060 *et seq.*]**

**(Brought by Off-the-Clock Plaintiffs and California Class Representatives, on behalf of themselves and all Collective Action Members and California Class Members Against all Defendants)**

241.    Off-the-Clock Plaintiffs, on behalf of themselves and all Collective Action Members, and re-allege and incorporate by reference all previous paragraphs.

242.    California Class Representatives, on behalf of themselves and all California Class Members, re-allege and incorporate by reference all previous paragraphs.

243.    An actual controversy has arisen and now exists between the parties relating to the legal rights and duties of the parties with respect to the FLSA, for which Off-the-Clock Plaintiffs desire a declaration of rights and other relief available pursuant to 28 U.S.C. section 2201 and Federal Rule of Civil Procedure 57.

244.    An actual controversy has arisen and now exists between the parties relating to the legal rights and duties of the parties as set forth above under California law, for which California Class Representatives desire a declaration of rights and other relief available pursuant to the California Declaratory Judgment Act, California Code of Civil Procedure section 1060 *et seq.*

245.    A declaratory judgment is necessary and proper in that Plaintiffs contend that Defendants have committed and continue to commit the violations set forth above and Defendants, on information and belief, will deny that they have done so and/or that they will continue to do so.

246.    An actual controversy exists between Plaintiffs and Defendants as to whether the Pre-Shift Duties and Post-Shift Duties are compensable time under the FLSA and California law.

247.    Plaintiffs are informed and believe Defendants contend that the Pre-Shift Duties and

1    Post-Shift Duties are not compensable time under the FLSA and California law.

2        248.    Plaintiffs are entitled to a judicial determination that the Pre-Shift Duties and Post-

3    Shift Duties are compensable time under the FLSA and California law.

4        249.    An actual controversy exists between Plaintiffs and Defendants as to whether

5    AMERICAN SUGAR REFINING, INC., and ASR GROUP COMMODITIES (US), LLC are joint

6    employers of Off-the-Clock Plaintiffs, California Class Representatives, Collective Action Members,

7    and California Class Members for the purposes of FLSA and California law.

8        250.    Plaintiffs are informed and believe Defendants contend that AMERICAN SUGAR

9    REFINING, INC. and ASR GROUP COMMODITIES (US), LLC are not a joint employers of Off-

10   the-Clock Plaintiffs, California Class Representatives, Collective Action Members, and California

11   Class Members for the purposes of FLSA and California law.

12       251.    Plaintiffs entitled to a judicial determination that AMERICAN SUGAR REFINING,

13   INC. and ASR GROUP COMMODITIES (US), LLC are joint employers of Off-the-Clock Plaintiffs,

14   California Class Representatives, Collective Action Members, and California Class Members for the

15   purposes of FLSA and California law.

16       252.    An actual controversy exists between Off-the-Clock Plaintiffs and Defendants as to

17   whether Defendants' failure to pay all overtime compensation to Off-the-Clock Plaintiffs and

18   Collective Action Members due under the FLSA was reckless, intentional, and/or knowing,

19   constituting a willful violation under the FLSA.

20       253.    Off-the-Clocl Plaintiffs are informed and believe Defendants contend that their failure

21   to pay all overtime compensation to Collective Action Members due under the FLSA was not

22   reckless, intentional, or knowing, thereby not constituting a willful violation under the FLSA.

23       254.     Off-the-Clocl Plaintiffs are entitled to a judicial determination that Defendants' failure

24   to pay all overtime compensation to Collective Action Members due under the FLSA was reckless,

25   intentional, and/or knowing, constituting a willful violation.

26       255.    An actual controversy exists between California Class Representatives and Defendants

27   as to whether Defendants failed to promptly pay all wages due to California Class Representatives

28   and California Class Members for purposes of California Labor Code section 204.

256.    California Class Representatives are informed and believe Defendants contend they promptly paid California Class Representatives  and California Class Members all wages when due for the purposes of California Labor Code section 204.

257.    California Class Representatives are entitled to a judicial determination that Defendants failed to promptly pay all wages due to California Class Representatives and California Class Members for purposes of California Labor Code section 204.

258.    An actual controversy exists between California Class Representatives and Defendants as to whether Defendants' failure to promptly pay all wages to California Class Representatives and California Class Members was willful and/or intentional for the purposes of California Labor Code section 210.

259.    California Class Representatives are informed and believe Defendants contend that they did not willfully or intentionally fail to promptly pay all wages when due to California Class Representatives  and California Class Members.

260.    California Class Representatives are entitled to a judicial determination that Defendants' failure to promptly pay all wages to California Class Representatives and California Class Members was willful and/or intentional for the purposes of California Labor Code section 210.

261.    An actual controversy exists between California Class Representatives and Defendants as to whether Defendants' unilateral deduction/withholding of wages and/or failure to pay wages pursuant to a statute or contract earned by California Class Representatives and California Class Members violated California Labor Code sections 221, 222, and 223.

262.    California Class Representatives are informed and believe Defendants contend they did not unilaterally deduct/withhold wages and/or fail to pay wages pursuant to a statute or contract earned by California Class Representatives and California Class Members in violation of California Labor Code sections 221, 222, and 223.

263.    California Class Representatives are entitled to a judicial determination that Defendants' unilateral deduction/withholding of wages and/or failure to pay wages pursuant to a statute or contract earned by California Class Representatives  and California Class Members violated California Labor Code sections 221, 222, and 223.

264.    An actual controversy exists between California Class Representatives and Defendants as to whether Defendants' unilateral deduction/withholding of wages and/or failure to pay wages mandated by statute or contract to California Class Representatives and California Class Members was willful and/or intentional for the purposes of California Labor Code section 225.5.

265.    California Class Representatives are informed and believe Defendants contend that they did not willfully or intentionally deduct/withhold wages and/or fail to pay wages mandated by statute or contract for the purposes of California Labor Code section 225.5.

266.    California Class Representatives are entitled to a judicial determination that Defendants' unilateral deduction/withholding of wages and/or failure to pay wages mandated by statute or contract was willful and/or intentional for the purposes of California Labor Code section 225.5.

267.    An actual controversy exists between Plaintiffs Lederer and Pedro and Defendants as to whether Defendants violated California Labor Code sections 201-203 by willfully failing to make timely payment of the final wages due to California Waiting Time Sub-Class Members who quit, were discharged, or have otherwise separated from employment with Defendants.

268.    Lederer and Pedro are informed and believe Defendants contend they did not violate California Labor Code sections 201-203 by willfully failing to make timely payment of the final wages when due to California Waiting Time Sub-Class Members.

269.    Lederer and Pedro are entitled to a judicial determination that Defendants violated California Labor Code sections 201-203 by willfully failing to make timely payment of final wages due to California Waiting Time Sub-Class Members.

270.    An actual controversy exists between California Class Representatives and Defendants as to whether Defendants violated California Labor Code section 1174 and IWC Wage Order No. 1-2001 section 7 by failing to maintain and provide California Class Representatives and California Class Members with access to complete and accurate records.

271.    California Class Representatives are informed and believe Defendants contend they did not violate California Labor Code section 1174 and IWC Wage Order No. 1-2001 section 7 by failing to maintain and provide California Class Representatives and California Class Members with

access to complete and accurate records.

272. California Class Representatives are entitled to a judicial determination that Defendants violated California Labor Code section 1174 and IWC Wage Order No. 1-2001 section 7 by failing to maintain and provide California Class Representatives and California Class Members with access to complete and accurate records

273. An actual controversy exists between California Class Representatives and Defendants as to whether Defendants violated California Labor Code section 226 by failing to provide the information required semimonthly or with each payment of wages to California Class Representatives and California Class Members.

274. California Class Representatives are informed and believe Defendants contend they did not violate California Labor Code section 226 by failing to provide the information required semimonthly or with each payment of wages to California Class Representatives and California Class Members.

275. California Class Representatives are entitled to a judicial determination that Defendants violated California Labor Code section 226 by failing to provide the information required semimonthly or with each payment of wages to California Class Representatives and California Class Members.

276. An actual controversy exists between Plaintiffs Bello-Lafrades and Brown and Defendants as to whether Defendants violated multiple provisions of the California Labor Code and IWC Wage Order No. 1-2001 entitling Bello-Lafrades and Brown to recover penalties pursuant to PAGA.

277. Bello-Lafrades and Brown are informed and believe Defendants contend they did not violate the California Labor Code or IWC Wage Order No. 1-2001, thus not entitling Bello-Lafrades and Brown to an award of statutory penalties pursuant to PAGA.

278. Bello-Lafrades and Brown are entitled to a judicial determination that Defendants violated multiple provisions of the California Labor Code and IWC Wage Order No. 1-2001 entitling Bello-Lafrades and Brown to recover penalties pursuant to PAGA.

279. An actual controversy exists between California Class Representatives and Defendants

as to whether Defendants violated California Business and Professions Code section 17200 *et seq.* through conduct as set forth in the foregoing paragraphs.

280.     California Class Representatives are informed and believe Defendants contend they did not violate California Business and Professions Code section 17200 *et seq.* through their policies and practices.

281.     California Class Representatives entitled to a judicial determination that Defendants violated California Business and Professions Code sections 17200 *et seq.* through conduct as set forth in foregoing paragraphs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request the following relief:

**Regular Rate Claims**

1.     Recovery of unpaid overtime compensation and interest thereon plus an equal amount of liquidated damages for all Regular Rate Plaintiffs pursuant to 29 U.S.C. section 216(b);

**Collective Action Claims**

2.     Conditional Certification of the Collective Action;

3.     Facilitated Notice to the Collective Action Members;

4.     Off-the-Clock Plaintiffs as representatives of the Collective Action;

5.     Designation of Plaintiffs' counsel as counsel for the Collective Action;

6.     Recovery of unpaid overtime compensation and interest thereon plus an equal amount of liquidated damages for all Off-the-Clock Plaintiffs and Collective Action Members pursuant to 29 U.S.C. section 216(b);

7.     Injunctive relief ordering Defendants to cease and desist from engaging in said unlawful conduct, including but not limited to, not paying Collective Action Members and California Class Members the applicable legal rate for all hours worked;

**Class Action Claims**

8.     Certification of this action as a Class Action on behalf of the proposed Class under Federal Rule of Civil Procedure 23;

9.     Designation of Plaintiffs Bello-Lafrades and Brown as Class Representatives of the

California Class;

10. Designation of Plaintiffs Lederer and Pedro as Sub-Class Representatives of the California Waiting Time Sub-Class;

11. Designation of Plaintiffs' counsel as Class Counsel for the California Class;

12. An award of damages and penalties for failure to timely pay wages to Off-the-Clock Plaintiffs and California Class Members pursuant to California Labor Code sections 204 and 210, subject to proof at trial;

13. An award of damages and penalties for failure to timely pay wages to California Class Members pursuant to California Labor Code sections 221, 222, 223, and 225.5, subject to proof at trial;

14. An award of waiting time penalties to California Waiting Time Sub-Class Members pursuant to California Labor Code section 203, subject to proof at trial;

15. An award of damages for the knowing and intentional failure to provide the information required by California Labor Code section 226(a) that resulted in injury pursuant to section 226(e);

16. An award of statutory penalties pursuant to California Labor Code sections 201-204, 210, 221, 222, 223, 225.5, 226, 226.3, 1174.5, and 2698-99;

17. An award of restitution of all amounts owed in unpaid wages, overtime wages, prevailing wages, minimum wage compensation, and unlawful deductions from wages, and interest thereon, in an amount according to proof at trial, pursuant to California Business & Professions Code section 17200 *et seq.*;

18. Disgorgement of profits and all other appropriate equitable relief authorized by California Business & Professions Code section 17203;

19. Prejudgment and post judgment interest on all sums awarded;

20. Declaratory relief that includes the following:

a) A judgment declaring that the Pre-Shift Duties and Post-Shift Duties performed by Collective Action Members and California Class Members are compensable under both the FLSA and California law;

b) A judgment declaring that AMERICAN SUGAR REFINING, INC. is a joint employer of Regular Rate Plaintiffs, Collective Action Members, and California Class Members for the purposes of FLSA and California law;

c) A judgment declaring that Defendants' failure to pay all overtime compensation due to Collective Action Members was reckless, intentional, and/or knowing, constituting a willful violation under the FLSA;

d) A judgment declaring that Defendants failed to promptly pay all wages when due to California Class Members for the purposes of California Labor Code section 204;

e) A judgment declaring that Defendants willfully and/or intentionally failed to promptly pay all wages when due for the purposes of California Labor Code section 210;

f) A judgment declaring that Defendants' unilateral deduction/withholding of wages and/or failure to pay wages pursuant to a statute or contract earned by California Class Members violated California Labor Code sections 221, 222, and 223;

g) A judgment declaring that Defendants' unilateral deduction/withholding of wages and/or failure to pay wages pursuant to a statute or contract earned by California Class Members was willful and/or intentional for the purposes of California Labor Code section 225.5;

h) A judgment declaring that Defendants violated California Labor Code sections 201-203 by willfully failing to make timely payment of final wages due to California Waiting Time Sub-Class Members;

i) A judgment declaring that Defendants violated California Labor Code section 1174 and IWC Wage Order No. 1-2001 section 7 by failing to maintain and provide California Class Members with access to complete and accurate records;

j) A judgment declaring that Defendants violated California Labor Code section 226 by failing to provide the information required semimonthly or with each payment of wages to California Class Members;

k) A judgment declaring that Defendants violated multiple provisions of the California Labor Code and IWC Wage Order No. 1-2001 entitling California Class Members to recover penalties pursuant to PAGA; and

l) A judgment declaring that Defendants violated California Business and Professions Code section 17200 *et seq.* through the conduct as set forth in the foregoing paragraphs.

21. Attorney fees and litigation expenses in an amount the Court determines to be reasonable, pursuant to 29 U.S.C. section 216(b), California Labor Code sections 218.5, 218.6, 226, and 2699(g)(1), and California Code of Civil Procedure section 1021.5, and such other provisions as may be applicable;

22. Costs of suit;

23. An incentive award for Plaintiffs Bello-Lafrades, Brown, Lederer, and Pedro for bringing the Class Action; and

24. Such other and further relief as is equitable, just, and proper.

## **JURY DEMAND**

Plaintiffs hereby demand trial by jury on all issues triable of right by jury.

Respectfully Submitted,

Dated: October 10, 2025                              **MASTAGNI HOSTEDT, A.P.C.**

By:     /s/ David E. Mastagni
DAVID E. MASTAGNI
TAYLOR DAVIES-MAHAFFEY
Attorneys for Plaintiffs,
JEFFREY BELLO-LAFRADES, et al.