1 DAVID E. MASTAGNI, ESQ. (SBN 204244)
davidm@mastagni.com
2 TAYLOR DAVIES-MAHAFFEY, ESQ. (SBN 327673)
tdavies-mahaffey@mastagni.com
3 AMANDA R. MCCARTHY, ESQ. (SBN 354058)
amccarthy@mastagni.com
4 **MASTAGNI HOLSTEDT, A.P.C.**
1912 I Street
5 Sacramento, California 95811-3151
Telephone:     (916) 446-4692
6 Facsimile:      (916) 447-4614

8 Attorneys for Plaintiffs,
JEFFREY BELLO-LAFRADES, et al.
9

10

11                 UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO
12

13 | Jeffrey Bello-Lafrades, Otis Brown, Keith | Case No. 3:24-CV-07006-JD |
|---|---|
Lederer, Gary Pedro, Darren Abeyta, Bryan

**PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION AND APPROVAL OF NOTICE:**

Jeffrey Bello-Lafrades, Otis Brown, Keith
Lederer, Gary Pedro, Darren Abeyta, Bryan
Adams, Miguel Ahumada, Ruben Alvernaz,
Amando Antonio, Cristian Aparicio-Aldana,
Timothy Aung, Dominic Austin, Harinder
Bains,  Timothy Ballard, Michael Baluyut,
Christian Barajas, Shawn Batey, Clodualdo
Bello Jr., Joe Bello, Mario Benoit, John Best,
Vinod Bhagirath, D'maree Bonner, Mario
Bonner, Greg Bradley, Kimiyante Bryant Sr.,
Chuck Burke, Paul Burnett, Kevin Buss,
Legival Cabansag, Guadalupe Camarillo,
Courtney Camper, Paul Mark Tauyan
Cantiller, Francisco Ceja,  Marco Cerna,
Ruben Cervantes, Abey Chanhsombath, Lana
Chapman, Patricia Childress, Deepak
Chopra, Vincent  Cipponeni, Paul Bernard
Cleary Jr., Don Cooper Jr., Lisa Cornista,
Justin Crow, Eduardo Cruz, Fernando Cruz,
Anthony Dauer, Wendell De Chavez, Clayton
DeAmaral, Larry Delgado, Eric Diaz,  Ryan
Doan, Billy Joe Downs, Isiah Edwards,
Gilbert Elvira Jr., Roberto Escobedo,  Kyerra
Evans-venson, Sylvia Farr, Mark Flanary,
Mark Flynn, David Frye, Asser Garcia, Cesar
Garibay, Nirmal Singh Gill, Jose De Jesus
Gonzalez, Martin Gonzalez, Melody

**PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION AND APPROVAL OF NOTICE:**

**(1)  NOTICE OF MOTION**
**(2)  MEMORANDUM OF POINTS AND AUTHORITIES**

Date: February 12, 2026
Time: 11:00 AM
Courtroom: 11
Judge: Hon. James Donato

Complaint Filed: October 7, 2024
FAC Filed: October 10, 2025
Trial Date: April 26, 2027

Goodrow, Irvin Green, Mauricio Green, Ian
Guidry, Gregory Gutierrez, Sofiane Hachemi,
Kevin Hardy, Mason Harrington, Jacqueline
Hazlewood, Steven Hendrix, Connie Hill,
Jerry Hill, Vanessa Hill, Antonio Hodges,
Sandip Hundal, Melvin Jarvis Jr., Dylan,
Jimenez, Patrick Jimenez, Jaspreet Singh
Johl, Ronald Jorvina, Romeo Jumangit,
Michael Keegan, Keith Lawson, Christopher
Lee, David Lemley, Shawn Lesky, Ethan
Lewis, Gregory Lindke, Daniel Clyde Little,
Samuel Locastro, Emmanuel Loera, Steven
Loera, Michael Long, Jerome Luckett, Keith
Lusetti, Robert Lynn, Travis Dean Mallonee,
Andy Marfoldi, Ricky Marquez, Davonte
Martinez, Ryan Martinez, Daryl Mason,
Edsel Maybituin, Gregory McAroy, Kim
Quincy McConico, Darlene McDade, Ronald
McLen, Frank McMillan, Jordan McPherson,
Jose Medina, Aron Meraz, Jowan Michael,
Alejandro Mijangos, Cynthia Miramontes,
Stephanze Mitchell, Falana Montgomery,
Edgar Murillo, Ryan Murphy, Tasha Nelson,
Kevin Nicholas, Ashley Nicks, Joshua
Normandeau, Russell Obee, David Ollison,
Calvin Orellana, Roberto Orellana Jr., Orion
Oyedeji, Rey Padilla, Anthony Paige, Scott
Paradis, Paul Pastori, Javis Payne, Kyle
Pecoraro, Lucas Pecoraro, Michael Pelton,
Tony Phan, Dave Phanh, Rudy Phipps, Robin
Pittman, Arthur Pompa Jr., Richard Porter Jr.,
Andrew Prather, John Price, Kimberly Price,
Baljit Purewal, Brent Quade, Jason Quiles,
Adrian Quintana, Roberto Quintana, Paul
Rakkar, Richo Richardson, Collins Rivers,
Michael Robinson, Robert Rockdaschel,
Roxanne Rodriguez, Thomas Rohrbacher,
Ryan Rollins, Pedro Romo, Danny Umana,
Jovan Rush, Jagdish Sahota, Vicky Saini,
Rupinder Samra, Surjit Sandhu, Baljeet
Sangha, Dilbar Sangha, Damian Santa Ana,
Christopher Schoenrock, Justin Sellers,
Deepak Sharma, Mike Sharma, Yuvraj
Sharma, Lorenzo Shaw, Larry Shields,
Luchiana Short Houston, David Simpkins,
Bulwinder Singh, Charanpreet Singh,
Dilramnik Singh, Inderjit Singh, Jasbir
Singh, Jaslok Singh, Jiwan Singh, Manpreet

Singh, Mohinder Singh, Robert Slack,
Kendra Sparks, Demetrus Spears, Bertha
Spencer-Johnson, Matthew Storck, Anthony
Stralla, Tracy Strickland Smith, Raymond
Strong, Charles Surman, Karan Tewari,
Ravinder Tewari, Shawinder Tewari,
Larussell Thomas,  Edgar Thompson Jr.,
Jemar Thompson, Toriano Thompson, Ravati
Tiwari,  Noel Tostado, Gracen Trinidad,
Kerry Trosclair III, Ryan Turnage, Eddie
Turner Jr., Charles Uoo, Antonio Valenzuela,
Addison Vaughn, Eduardo Velarde, Richard
Wallace, David Webb, Damian West,
Dominic West, Nicholas Whitmire, Walter
Whitt, John Wieckowski, Ayana Williams,
Veante Williams, Roger Wilson, Marcus
Woodring, Claudia Zamora Madrigal, on
behalf of themselves and all others similarly
situated; Beatrice Coombs, Manuel Furtado,
Carl Jiles Sr. Michael Podplesky, Dev Takher

        Plaintiffs,

    v.

C&H Sugar Company, Inc., American Sugar
Refining, Inc., and ASR Group Commodities
(US), LLC,

        Defendants.

PLTS' MTN FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION AND
APPROVAL OF NOTICE - 3:24-CV-07006-JD

1

## TABLE OF CONTENTS

2  TABLE OF CONTENTS..............................................................................................................iv

3  TABLE OF AUTHORITIES ........................................................................................................ v

   NOTICE OF MOTION................................................................................................................ vi

4  MEMORANDUM OF POINTS AND AUTHORITIES ............................................................... 1

5  I.      INTRODUCTION ............................................................................................................. 1

   II.     FACTUAL BACKGROUND ........................................................................................... 1

6         A.  Sugar Processing Collective Action Members ...................................................... 2

7         B.  Warehouse Collective Action Members ................................................................. 3

8         C.  Pre-Shift and Post-Shift Duties .............................................................................. 3

9         D.  Time Rounding Practice .......................................................................................... 4

10        E.  Off-the-Clock Policy ............................................................................................... 5

11 III.     ARGUMENT ..................................................................................................................... 5

12        A.  Conditional Certification is Reviewed Under the FLSA's Lenient Standard. ........ 6

13        B.  Plaintiffs and Putative Collection Action Members Are Similarly Situated. .......... 7

14            1.  Plaintiffs and Collective Action Members Perform the Same Pre-and Post-Shift Duties
                  and are Subject to the Same Compensation Policies. ..................................................... 8

15            2.  Plaintiffs and Collective Action Members Share Common Legal Questions..................... 9

16            3.  Differences in the Job Duties of Subclasses are Irrelevant. ................................................ 10

           C.  Facilitated Notice to Similarly Situated Individuals is Appropriate to Allow Them the
17
               Opportunity to Exercise Their Rights Under The FLSA. ....................................... 10
18
           D.  Plaintiffs' Proposed Notice Plan is Appropriately Tailored to this Lawsuit. ........ 12
19
           E.  Plaintiffs' Proposed Notice is Neutral, Accurate, and Provides Necessary Information....... 13
20
           F.  A Reminder Notice is Appropriate. ....................................................................... 14
21
           G.  Plaintiffs Request Putative Member Contact Information to Facilitate Notice. .................... 14
22
    IV.    CONCLUSION................................................................................................................ 15
23

24

25

26

27

28

1

**TABLE OF AUTHORITIES**

2

**Cases**

3

*Adams v. Inter-Con Sec. Sys., Inc.*,
   242 F.R.D. 530 (N.D. Cal. 2007) ........................................ 6, 7, 8, 9, 10, 12

4

5

*Alvarez v. IBP, Inc.*,
   339 F.3d 894 (9th Cir. 2003) ........................................ 9

6

*Ash v. Bayside Sols., Inc.*,
   No. 14-CV-02183-WHO, 2015 WL 427731 (N.D. Cal. Jan. 30, 2015) ........................................ 6

7

8

*Ballaris v. Wacker Siltronic Corp.*,
   370 F.3d 901 (9th Cir. 2004) ........................................ 9

9

*Bollinger v. Residential Cap., LLC*,
   761 F. Supp. 2d 1114 (W.D. Wash. 2011) ........................................ 11

10

11

*Campbell v. City of Los Angeles*,
   903 F.3d 1090 (9th Cir. 2018) ........................................ 5, 7

12

*Carter v. XPO Last Mile, Inc*,
   No. 16-CV-01231-WHO, 2016 WL 5680464 (N.D. Cal. Oct. 3, 2016) ........................................ 7

13

14

*Cuevas v. ConAm Mgmt. Corp.*,
   No. 18CV1189-GPC(LL), 2019 WL 5320544 (S.D. Cal. Oct. 21, 2019) ........................................ 15

15

*Deatrick v. Securitas Sec. Servs. USA*,
   No. 13-cv-05016-JST, 2014 WL 5358723 (N.D. Cal. 2014) ........................................ 14

16

17

*Dominguez v. Better Mortg. Corp.*,
   No. 820CV01784JLSKES, 2022 WL 17216831 (C.D. Cal. Oct. 24, 2022) ........................................ 13, 14

18

*Dudley v. TrueCoverage LLC*,
   No. CV 18-3760 PA (AGRX), 2018 WL 6431869 (C.D. Cal. Sept. 28, 2018) ........................................ 13, 14

19

20

*Escobar v. Whiteside Const. Corp.*,
   No. C 08-01120 WHA, 2008 WL 3915715 (N.D. Cal. Aug. 21, 2008) ........................................ 7

21

*Feaver v. Kaiser Found. Health Plan, Inc.*,
   No. 15-CV-00890-EMC, 2016 WL 324176 (N.D. Cal. Jan. 27, 2016) ........................................ 6, 7

22

23

*Fernandez v. Tox Corp.*,
   677 F.Supp.3d 1089 (C.D. Cal. 2023) ........................................ 9

24

*Grayson v. K-Mart*,
   79 F. 3d 1086 (11th Cir. 1995) ........................................ 6

25

26

*Greist v. LendUS, LLC*,
   2025 WL 1616541 (N.D. Cal. 2025) ........................................ 6

27

*Hamilton v. NuWest Group Holdings, LLC*,
   No. C22-1117RSM, 2023 WL 3582939 (W.D. Wash. May 22, 2023) ........................................ 15

28

*Harrington v. Cracker Barrel Old Country Store, Inc.*,
　142 F.4th 678 (9th Cir. 2024) ...................................................................... 6

*Harris v. Vector Marketing Corp.*,
　716 F.Supp.2d 835 (N.D. Cal. 2010) ......................................................... 11

*Heath v. Google Inc.*,
　215 F. Supp. 3d 844 (N.D. Cal. 2016) .......................................................... 6

*Hill v. R+L Carriers, Inc.*,
　690 F. Supp. 2d 1001 (N.D. Cal. 2010) ........................................................ 6

*Hoffmann-La Roche, Inc. v. Sperling*,
　493 U.S. 165 (1989) ................................................................. vii, 8, 11, 12, 14

*Houston v. URS Corp.*,
　591 F.Supp.2d 827 (E.D. Va. 2008) ........................................................... 12

*Kincheloe v. American Airlines, Inc.*,
　No. 5:21-cv-00515-BLF, 2021 WL 2322322 (N.D. Cal. June 7, 2021) ......................... 7

*Leuthold v. Destination America, Inc.*,
　224 F.R.D. 462 (N.D. Cal. 2004) ............................................................ 7, 12

*Lewis v. Wells Fargo & Co.*,
　669 F. Supp. 2d 1124 (N.D. Cal. 2009) ....................................................... 13

*Littlefield v. Dealer Warranty Services, LLC*,
　679 F.Supp.2d 1014 (E.D. Mo. 2010) .......................................................... 12

*Mowdy v. Beneto Bulk Transp.*,
　No. C 06–05682 MJP, 2008 WL 901546 (N.D. Cal. Mar. 31, 2008) ........................... 11

*Oppenheimer Fund, Inc. v. Sanders*,
　437 U.S. 340 (1978) ......................................................................... 15

*Orguiza v. Walldesign, Inc.*,
　No. 11-CV1374, 2012 WL 3561971 (D. Nev. Aug. 16, 2021) .................................... 7

*Otey v. CrowdFlower, Inc.*,
　No. 12-cv-05524-JST, 2013 WL 4552493 (N.D. Cal. 2013) .................................... 14

*Perez v. Comcast*,
　2011 WL 5979769 (N.D. Ill. Nov. 29, 2011) .................................................. 11

*Rabin v. PricewaterhouseCoopers LLP*,
　No. 16-CV-02276-JST, 2018 WL 3585143 (N.D. Cal. July 26, 2018) ............................ 7

*Ramirez v. Ghilotti Bros. Inc.*,
　941 F.Supp.2d 1197 (N.D.Cal.2013) ....................................................... 13, 14

*Randall v. Integrated Commc'n Serv., Inc.*,
　No. C20-5438JLR, 2021 WL 2328373 (W.D. Wash. June 8, 2021) .............................. 13

PLTS' MTN FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION AND
APPROVAL OF NOTICE - 3:24-CV-07006-JD

*Russell v. Wells Fargo & Co.*,
No. C 07-3993 CW, 2008 WL 4104212 (N.D. Cal. Sept. 3, 2008) ............................................ 6, 7

*Saleh v. Valbin Corporation*,
297 F.Supp.3d 1025 (N.D. Cal. 2017) ................................................................................... 10

*Senne v. Kansas City Royals Baseball Corp.*,
934 F.3d 918 (9th Cir. 2019) .............................................................................................. 10

*Shafer v. Red Tie, LLC*,
No. 2:20-CV-05726-ODW (PVCX), 2021 WL 1139739 (C.D. Cal. Mar. 25, 2021) ................. 14

*Tijero v. Aaron Brothers, Inc.*,
301 F.R.D. 314 (N.D. Cal. 2013) ...................................................................................... 8, 9

*Wellens v. Daiichi Sankyo, Inc.*,
No. 13-CV-00581-WHO, 2014 WL 2126877 (N.D. Cal., 2014) .......................................... 10

*Woods v. N.Y. Life Ins. Co.*,
686 F.2d 578 (7th Cir. 1982) .............................................................................................. 11

*Woods v. Vector Mktg. Corp.*,
No. C-14-0264 EMC, 2015 WL 1198593 (N.D. Cal. Mar. 16, 2015) .................................. 13

*Wren v. RGIS Inventory Specialists*,
256 F.R.D. 180 (N.D. Cal. 2009) ......................................................................................... 9

**Statutes**

29 U.S.C. § 201 et seq. .......................................................................................................... vii

29 U.S.C. § 216(b) ...................................................................................... vii, 1, 5, 6, 9, 11

29 U.S.C. § 255 .................................................................................................................... 11

29 U.S.C. § 256 .................................................................................................................... 11

**Other Authorities**

7B Wright, Miller, & Kane, *Federal Practice and Procedure* § 1807 (3d ed. 2005) ...................... 11

# NOTICE OF MOTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Plaintiffs Jeffrey Bello-Lafrades, et al., hereby move this Court for an order conditionally certifying this case as a collective action and facilitating notice to potential opt-in plaintiffs pursuant to 29 U.S.C. section 216(b). This motion is brought before the Honorable James Donato in the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California 94102, Courtroom 11, on February 12, 2026 at 11:00 AM, or as soon thereafter as the matter may be heard.

Plaintiffs seek an order conditionally certifying this collective action for violations by Defendants C&H Sugar Company, Inc., American Sugar Refining, Inc., and ASR Group Commodities (US), LLC (collectively "C&H" or "Defendants") of the Fair Labor Standards Act ("FLSA") , 29 U.S.C. section 201 et seq. and granting leave to notify similarly situated class members, as authorized by the United States Supreme Court in *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989). Plaintiffs also request appointment of Jeffrey Bello-Lafrades and Otis Brown as Collective Action Representatives, and designation of Plaintiffs' Counsel as collective action counsel.

An order for conditional certification and facilitated notice is appropriate in this case to provide "similarly situated" potential plaintiffs with information on the existence of this collective action lawsuit filed against Defendants, to advise them how their rights may be affected by this lawsuit, and to instruct them on the procedure for participating in this lawsuit.

This motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Declarations David E. Mastagni, Jeffrey Bello-Lafrades, Otis Brown, Keith Lederer, Gary Pedro, Courtney Camper, Fernando Cruz, Darlene McDade, Cynthia Miramontes, Ryan Murphy, Rey Padilla, Damian Santa Ana, Justin Sellers, Luchiana Short Houston, David Webb, and Marcus Woodring, the exhibits attached thereto, the proposed order, all pleadings and papers on file in this action, and such further evidence and argument as the Court may permit.

///

PLTS' MTN FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION AND APPROVAL OF NOTICE - 3:24-CV-07006-JD

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

Dated: January 5, 2026                **MASTAGNI HOLSTEDT, A.P.C.**


By:      /s/ David E. Mastagni
         DAVID E. MASTAGNI
         TAYLOR DAVIES-MAHAFFEY
         AMANDA R. MCCARTHY
         Attorneys for Plaintiffs,
         JEFFREY BELLO-LAFRADES, et al.

1

2

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

3       Plaintiffs Jeffrey Bello-Lafrades et al., on behalf of themselves and all similarly situated

4    individuals, move this Court for conditional certification of their FLSA claims under 29 U.S.C.

5    section 216(b). These claims, set forth in the First Amended Complaint ("FAC"), allege that

6    Defendants violated the FLSA by failing to pay overtime owed to Plaintiffs and all similarly situated

7    individuals for time spent performing pre-shift and post-shift duties, first by employing an improper

8    time-rounding practice and then by requiring employees to work off-the-clock. (FAC, Dkt. No. 46.)

9       Plaintiffs seek conditional certification of two subclasses: (1) Sugar Processing Collective

10   Action Members—all non-exempt hourly employees engaged in refining and processing raw sugar

11   into refined sugar and related activities in California who performed uncompensated pre- and post-

12   shift duties and worked over 40 hours in a workweek without proper overtime pay from October 7,

13   2021 until this action proceeds to final judgment or settlement (the "Collective Action Period"); and

14   (2) Warehouse Collective Action Members—all non-exempt hourly employees engaged in shipping,

15   receiving, and related warehouse activities in California under the same conditions. (FAC ¶¶ 36-37.)

16   These subclasses reflect similarly situated but distinct groups affected by Defendants' uniform

17   policies.

18       Conditional certification is warranted under the Ninth Circuit's lenient standard as the FAC

19   provides substantial allegations of a common policy affecting similarly situated employees.

20   Accordingly, Plaintiffs seek conditional certification to facilitate collective litigation to enforce the

21   rights guaranteed by the FLSA.

22

**II.    FACTUAL BACKGROUND**

23       Defendants employ Plaintiffs and putative collective action members in non-exempt hourly

24   positions at their Crockett, California facility. (Declaration of Jeffrey Bello-Lafrades ("Bello-

25   Lafrades Decl.") ¶ 3; Declaration of Otis Brown ("Brown Decl.") ¶ 3; FAC ¶¶ 14, 16-19.) Employees

26   in sugar processing positions (represented by Bello-Lafrades) and warehouse positions (represented

27   by Brown) were subject to uniform policies requiring uncompensated pre-shift duties (e.g., donning

28   protective gear, handwashing, walking to workstations, and pre-shift debriefing) and post-shift duties

1  (e.g., debriefing relief coworkers, walking from workstations, and doffing gear). (Bello-Lafrades

2  Decl. ¶¶ 4-5; Brown Decl. ¶¶ 4-5; FAC ¶¶ 81-93.) 15 named plaintiffs[1] have filed declarations

3  attesting to Defendants' uniform policies.

4  **A.  <u>Sugar Processing Collective Action Members</u>**

5          Plaintiff Bello-Lafrades and all similarly situated Sugar Processing Collective Action

6  Members are or were non-exempt employees of Defendants whose duties primarily include manual

7  labor in the processing of raw sugar into refined sugar and related activities thereof. (Bello-Lafrades

8  Decl. ¶ 3; FAC ¶ 36.)

9          The hours, wages, and other terms and conditions of employment of Plaintiff Bello-Lafrades

10  and all similarly situated Sugar Processing Collective Action Members are governed in part by a

11  Memorandum of Agreement ("MOA") between Sugar Workers Union 1 and C&H Sugar Company,

12  Inc. (Bello-Lafrades Decl., ¶¶ 12-13; FAC ¶ 77.) During the Collective Action Period, employees

13  were covered by an MOA effective July 27, 2017 to May 31, 2022 (Bello-Lafrades Decl., Exh. A),

14  and then by a subsequent MOA effective June 29, 2022 to May 31, 2025 (*Id.*, Exh. B). The relevant

15  terms did not change between the two MOA versions so they will collectively be referred to herein

16  as the Processing MOA. (Bello-Lafrades Decl. ¶ 12; FAC ¶ 77.)

17          All similarly situated Sugar Processing Collective Action Members are paid hourly according

18  to a wage scale that is incorporated into the Processing MOA. (Bello-Lafrades Decl. ¶ 14, Exh A, pp.

19  35-36; Exh. B, p. 66-67; FAC ¶ 77.) Section 3(B) of the MOA defines a "day" as the 24-hour period

20  from 11:01 PM to 11:01 PM. A 24-hour workday schedule is divided into three shifts: 11:00 PM –

21  7:00 AM, 7:00 AM – 3:00 PM, and 3:00 PM – 11:00 PM. (Bello-Lafrades Decl. ¶ 15; Exh. A, p. 3;

22  Exh, B, pp. 51-52; FAC ¶ 78.) During each 8-hour work shift, employees receive a 30-minute lunch

23  period. (*Id.*) Therefore, each "Scheduled Work Shift" is eight and one-half (8 ½) hours.

24          During the Collective Action Period, Sugar Processing Collective Action Members regularly

25

26

27  [1] Declarations of the following named plaintiffs are filed in support of this motion, attesting to Defendants' uniform
   policies and practices that affected similarly situated employees: Jeffrey Bello-Lafrades, Otis Brown, Keith Lederer, Gary

28  Pedro, Courtney Camper, Fernando Cruz, Darlene McDade, Cynthia Miramontes, Ryan Murphy, Rey Padilla, Damian
   Santa Ana, Justin Sellers, Luchiana Short Houston, David Webb, and Marcus Woodring.

1    worked five Scheduled Work Shifts per week, totaling a 40-hour workweek. (Bello-Lafrades Decl. ¶
2    16.) They also regularly worked overtime hours in addition to their five Scheduled Work Shifts. (*Id.*)

3    **B.   Warehouse Collective Action Members**

4         Plaintiff Brown and all similarly situated Warehouse Collective Action Members are or were
5    non-exempt employees of Defendants whose duties primarily include manual labor in shipping,
6    receiving, and related warehouse activities. (Brown Decl. ¶ 3; FAC ¶ 37.) Although they are parties
7    to a different MOA than the Sugar Processing Collective Action Members, they are subject to the
8    same typical work schedules, pre- and post-shift duties, rounding and overtime policies, and
9    compensation methods. (Brown Decl. ¶¶ 4-28.)

10        The hours, wages, and other terms and conditions of employment of the Warehouse Collective
11   Action Members are governed in part by an MOA between International Longshore and Warehouse
12   Union, Local 6 and C&H Sugar Company, Inc. (Brown Decl. ¶¶ 12-13.) During the Collective Action
13   Period, employees were covered by an MOA effective from June 1, 2019 to May 31, 2023 (*Id.*, Exh.
14   C) and then from June 19, 2023 to May 31, 2026 (*Id.*, Exh. D). The relevant terms did not change
15   between the two versions, collectively referred to as the Warehouse MOA. (*Id.* ¶ 12.)

16        Brown and all similarly situated Warehouse Collective Action Members are paid hourly
17   according to the MOA's wage scale. (*Id.* ¶ 14; Exh. C, p. 108; Exh. D, p. 145.) Warehouse MOA
18   Section 3(A) defines a "work day" as eight hours plus a half hour lunch. (Brown Decl. ¶ 15; Exh. C,
19   p. 80; Exh. D, p. 118.) Therefore, each "Scheduled Work Shift" is eight and one-half (8 ½) hours.

20        During the Collective Action Period, Brown and similarly situated Warehouse Collective
21   Action Members regularly worked five Scheduled Work Shifts per week, totaling a 40-hour
22   workweek. (Brown Decl. ¶ 16.) Brown and similarly situated Warehouse Collective Action Members
23   regularly worked overtime hours in addition to their five Scheduled Work Shifts. (*Id.*)

24   **C.   Pre-Shift and Post-Shift Duties**

25        When Bello-Lafrades, Brown, and all similarly situated employees arrive at the facility, they
26   must first enter a specified area referred to by employees as the "Boot Room" before they can go to
27   their workstations. (Bello-Lafrades Decl. ¶ 6; Brown Decl. ¶ 6; FAC ¶ 81.) In the Boot Room, they
28   don personal protective equipment ("PPE"), including a hairnet (and beard net if applicable), hardhat,

3

1  boots, and goggles. (*Id*.) Next, they must thoroughly wash their hands at a handwash station with

2  three sinks located directly outside the Boot Room. (Bello-Lafrades Decl. ¶ 7; Brown Decl. ¶ 7.) They

3  often wait in a line to access the handwash station. (*Id*.) Then they walk to their workstations. (Bello-

4  Lafrades Decl. ¶ 8; Brown Decl. ¶ 8.) Once at their workstations, employees speak with their

5  counterpart who they are relieving about the status of the station, any issues with the equipment, and

6  anything significant that occurred on the prior shift. (*Id*.) Activities described in this paragraph will

7  herein be referred to as "Pre-Shift Duties." Every workday, Pre-Shift Duties take, on average, 15-20

8  minutes to complete. (Bello-Lafrades Decl. ¶ 9; Brown Decl. ¶ 9; FAC ¶ 81.)

9          At the end of their shift, employees must discuss work status with their relief coworkers, walk

10  back to the Boot Room, and remove their PPE prior to leaving the facility. (Bello-Lafrades Decl. ¶

11  10; Brown Decl. ¶ 10; FAC ¶ 82.)  These activities will herein be referred to as "Post-Shift Duties."

12  Every workday, Post-Shift Duties take, on average, 5-10 minutes to complete. (*Id*.)

13          Defendants' safety policies mandate these Pre-Shift and Post-Shift Duties to prevent food

14  contamination and avoid workplace injuries. (Bello-Lafrades Decl. ¶ 11; Brown Decl. ¶ 11; FAC ¶

15  83.) Thus, these activities are integral and indispensable to the principal work duties and are

16  compelled by the necessities of the employer's business. They are performed during the time Bello-

17  Lafrades, Brown, and all similarly situated employees are subject to Defendants' control and suffered

18  or permitted to work with Defendants' knowledge. (*Id*.)

19  **D.  <u>Time Rounding Practice</u>**

20          Prior to January 1, 2024, employees were required to clock-in near the entrance of the facility,

21  before performing their Pre-Shift Duties, but were expected to be at their workstations at the

22  beginning of their Scheduled Work Shift. (Bello-Lafrades Decl. ¶ 19; Brown Decl. ¶ 19; FAC ¶ 84.)

23  Therefore, employees clocked in approximately 15-20 minutes earlier than the start of each scheduled

24  shift. (*Id*.) Employees were not permitted to leave their workstations until the end of their scheduled

25  shift and after they had fully debriefed their relief staff. (Bello-Lafrades Decl. ¶ 20; Brown Decl. ¶

26  20; FAC ¶ 85.) Employees then performed the remainder of their Post-Shift Duties and then clocked-

27  out when leaving the facility. (*Id*.) Therefore, employees clocked-out approximately 5-10 minutes

28  after the end of each scheduled shift. (*Id*.)

**PLTS' MTN FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION AND
APPROVAL OF NOTICE - 3:24-CV-07006-JD**

During this time, Defendants employed a practice which rounded employees' work hours down to conform with their scheduled shift. (Bello-Lafrades Decl. ¶ 21; Brown Decl. ¶ 21; FAC ¶ 86.) For example, if a scheduled shift began at 7:00 AM, and the employee clocked-in at 6:45 AM to perform his Pre-Shift Duties, his time would be rounded down to 7:00 AM. (Bello-Lafrades Decl. ¶ 22; Brown Decl. ¶ 22.) Likewise, if an employee's scheduled shift ended at 3:30 PM, and he clocked-out at 3:40 PM, his time would be rounded down to 3:30 PM. (*Id.*) Defendants' one-sided rounding practice resulted in employees consistently not getting paid for performing Pre-Shift Duties and Post-Shift Duties, even though they were clocked-in during that time. (Bello-Lafrades Decl. ¶¶ 23-24; Brown Decl. ¶¶ 23-24; FAC ¶ 87.)

**E.  Off-the-Clock Policy**

After January 1, 2024, Defendants moved the timeclocks from the plant entrance to the employees' workstations. (Bello-Lafrades Decl. ¶ 25; Brown Decl. ¶ 25; FAC ¶ 90.) Therefore, Plaintiffs clocked-in when they arrived at their workstations, after performing the Pre-Shift Duties, and clocked-out when they left their workstations, before performing the Post-Shift Duties. (*Id.*) This timekeeping practice resulted in employees not getting paid for performing Pre- and Post-Shift Duties because they were not clocked-in. (Bello-Lafrades Decl. ¶ 26; Brown Decl. ¶ 26; FAC ¶ 91.)

### III.  ARGUMENT

Section 216(b) of the FLSA provides that one or more employees may bring a collective action against any employer on behalf of "themselves and other employees similarly situated." 29 U.S.C. § 216(b). Under this provision, "workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt into the joint litigation." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018).

Our Circuit applies a two-step process for collective action certification. *Id.* at 1109-10. The Ninth Circuit declined to replace the two-step approach with a one-step analysis that rigorously enforces the similarly situated mandate at the outset of the litigation. *Harrington v. Cracker Barrel Old Country Store, Inc.*, 142 F.4th 678, 683 (9th Cir. 2024). The first step, conditional certification, occurs early in the proceedings to determine "whether the proposed class should be conditionally certified for the sole purpose of sending out notice of the proposed action to the potential class

PLTS' MTN FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION AND
APPROVAL OF NOTICE - 3:24-CV-07006-JD

1    members." *Feaver v. Kaiser Found. Health Plan, Inc.*, No. 15-CV-00890-EMC, 2016 WL 324176,

2    at *3 (N.D. Cal. Jan. 27, 2016).  At the second stage, after notice has been issued and discovery is

3    complete, the court conducts a more rigorous review to "make factual determinations regarding the

4    'propriety and scope' of the class." *Id.* at *4.

5    **A.  Conditional Certification is Reviewed Under the FLSA's Lenient Standard.**

6        To certify an FLSA collective action, courts must evaluate whether the plaintiffs and the

7    proposed collective action group are "similarly situated" for purposes of section 216(b). The standard

8    for conditional certification at step one for the purpose of providing notice is lenient and "typically

9    results in certification." *Russell v. Wells Fargo & Co.*, No. C 07-3993 CW, 2008 WL 4104212, at *2

10   (N.D. Cal. Sept. 3, 2008); *see also Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 536 (N.D. Cal.

11   2007). Plaintiffs need only show they and the putative class members are similar, not identical.

12   *Grayson v. K-Mart*, 79 F. 3d 1086, 1096 (11th Cir. 1995). To demonstrate similarity, "[a]ll that need

13   be shown by the plaintiff is that some identifiable factual or legal nexus binds together the various

14   claims of the class members in a way that hearing the claims together promotes judicial efficiency

15   and comports with the broad remedial policies underlying the FLSA." *Hill v. R+L Carriers, Inc.*, 690

16   F. Supp. 2d 1001, 1009 (N.D. Cal. 2010).

17       At this first step, the plaintiff "bears a very light burden in substantiating the allegations" to

18   show that similarly situated employees exist. *Ash v. Bayside Sols., Inc.*, No. 14-CV-02183-WHO,

19   2015 WL 427731, at *2 (N.D. Cal. Jan. 30, 2015). The preliminary certification stage occurs prior to

20   any significant discovery and the plaintiff need only show a "reasonable basis" for believing that

21   other employees were subject to the same policy. *Greist v. LendUS, LLC,* 2025 WL 1616541, at *2

22   (N.D. Cal. 2025); *Heath v. Google Inc.*, 215 F. Supp. 3d 844, 850 (N.D. Cal. 2016).

23       "[A]t this early stage of the litigation, the district court's analysis is typically focused on a

24   review of the pleadings but may sometimes be supplemented by declarations or limited other

25   evidence." *Campbell,* 903 F.3d at 1109. This lenient standard can be satisfied by "substantial

26   allegations," as reflected in the complaint, which is "loosely akin to a plausibility standard,

27   commensurate with the stage of the proceedings." *Id*. This leniency is appropriate because this

28   preliminary certification stage occurs prior to significant discovery being completed and the plaintiff

1  may have access to only "minimal evidence." *Orguiza v. Walldesign, Inc.*, No. 11-CV1374, 2012 WL

2  3561971, at *2 (D. Nev. Aug. 16, 2021). Here, Plaintiffs have requested and compelled discovery but

3  have not yet received substantive responses. (Declaration of David E. Mastagni ("Mastagni Decl.") ¶

4  19.)

5        Here, district "courts usually rely only on the pleadings and any affidavits that have been

6  submitted." *Leuthold v. Destination America, Inc.*, 224 F.R.D. 462, 468 (N.D. Cal. 2004). Substantial

7  allegations can be supported by declarations showing putative class members were victims of a single

8  decision, policy, or plan and that plaintiffs are generally comparable to them. *Kincheloe v. American*

9  *Airlines, Inc.*, No. 5:21-cv-00515-BLF, 2021 WL 2322322, at *2 (N.D. Cal. June 7, 2021); *see also*

10 *Adams,* 242 F.R.D. at 536. Plaintiffs must only identify "'some identifiable factual or legal nexus

11 [that] binds together the various claims of the class members in a way that hearing the claims together

12 promotes judicial efficiency and comports with the broad remedial policies underlying the FLSA.'"

13 *Rabin v. PricewaterhouseCoopers LLP*, No. 16-CV-02276-JST, 2018 WL 3585143, at *5 (N.D. Cal.

14 July 26, 2018) (quoting *Russell*, 2008 WL 4104212, at *3).

15       "The plaintiff need not conclusively establish that collective resolution is proper, because a

16 defendant will be free to revisit this issue at the close of discovery." *Kincheloe,* 2021 WL 2322322,

17 at *3. At this stage, "the Court should not consider the substantive merits of plaintiffs' FLSA claim."

18 *Feaver*, 2016 WL 324176, at *3. Courts in this district "do not usually consider defendants' evidence

19 in determining conditional certification." *Carter v. XPO Last Mile, Inc*, No. 16-CV-01231-WHO,

20 2016 WL 5680464, at *5 n. 5 (N.D. Cal. Oct. 3, 2016). Even if defendants present evidence in

21 opposition that may later negate a claim, courts "will not deny conditional certification at this stage

22 in the proceedings." *Escobar v. Whiteside Const. Corp.*, No. C 08-01120 WHA, 2008 WL 3915715,

23 at *4 (N.D. Cal. Aug. 21, 2008).

24 **B.  Plaintiffs and Putative Collection Action Members Are Similarly Situated.**

25       Defendants' non-exempt sugar processing employees and warehouse employees are similarly

26 situated, entitling them to a *Hoffmann-La Roche* notice.

27 ///

28 ///

**1.   Plaintiffs and Collective Action Members Perform the Same Pre- and Post-Shift Duties and are Subject to the Same Compensation Policies.**

Despite their different job titles, members of the Sugar Processing Subclass and the Warehouse Subclass are all required to perform identical Pre-Shift and Post-Shift Duties, including donning and doffing safety gear, washing their hands, walking to and from their stations, and participating shift-change briefings. (Bello-Lafrades Decl. ¶¶ 4-11; Brown Decl. ¶¶ 4-11; FAC ¶ 93.) Further, Defendants' policy of excluding Pre-Shift and Post-Shift Duties from compensable time and implementing an improper rounding practice is facility-wide and uniform, affecting all non-exempt employees. (Bello-Lafrades Decl. ¶¶ 16-28; Brown Decl. ¶¶ 16-28; FAC ¶ 93.) Thus, all Plaintiffs and putative class members perform these duties and were affected identically: they were underpaid due to the exclusion of compensable time from their hours worked. Plaintiffs' allegations show a single, unified, facility-wide policy that applies to the sugar processing and warehouse workforce.

In *Adams v. Inter-Con Security Systems, Inc.*, 242 F.R.D. 530, 538 (N.D. Cal. 2007), the court granted conditional certification of a nationwide FLSA collective action for security officers, holding that the plaintiffs had provided sufficient evidence under the lenient first-tier standard to demonstrate they were similarly situated to potential class members. The court relied on only 15 plaintiff declarations, across multiple states and over 60 work locations, detailing a common company policy requiring unpaid pre-shift briefings and recording scheduled rather than actual start times, to establish a factual basis for a unified illegal practice. *Id.*

Similarly, in *Tijero v. Aaron Brothers, Inc.*, 301 F.R.D. 314 (N.D. Cal. 2013), the court conditionally certified a class of retail employees who alleged they were required to perform "off-the-clock work" without proper compensation. The plaintiffs claimed all non-exempt employees were subject to the same company-wide policies that systematically underpaid overtime across over 100 California stores. *Id.* at 321. The court found these allegations sufficient for conditional certification because all employees were subject to the same policies regarding overtime and off-the-clock work requirements. *Id.* at 323; s*ee also Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180 (N.D. Cal. 2009) (certifying an FLSA collective action where plaintiffs showed there was a uniform policy that resulted in uncompensated donning time); *Fernandez v. Tox Corp.*, 677 F.Supp.3d 1089 (C.D. Cal.

1   2023) (granting conditional certification based on Defendants' uniform policy of failing to

2   compensate plaintiffs for mandatory training time).

3          This case mirrors the circumstances in which courts routinely grant conditional certification.

4   As in *Adams*, *Tijero*, and *Wren*, Plaintiffs have submitted sworn declarations showing that Defendants

5   maintained a uniform, facility-wide policy requiring non-exempt employees to perform mandatory

6   pre- and post-shift activities without compensation. At this lenient first stage, these common facts

7   establish a sufficient factual and legal nexus to warrant conditional certification and court-facilitated

8   notice under § 216(b).

9          **2. Plaintiffs and Collective Action Members Share Common Legal Questions.**

10         The FAC presents a common legal claim seeking compensation for activities that are

11  compensable under Ninth Circuit precedent. *Alvarez v. IBP, Inc*., 339 F.3d 894, 903 (9th Cir. 2003)

12  established that donning specialized safety equipment like gloves, hardhats, safety glasses, and work

13  boots is compensable when "required by law, by rules of [the employer], [and] by the nature of the

14  work" for sanitation and safety reasons. *Ballaris v. Wacker Siltronic Corp*., 370 F.3d 901, 914 (9th

15  Cir. 2004) found "gowning and related activities, putting on and taking off plant uniforms, traveling

16  between cleanrooms and locker rooms, and participating in 'pass down' briefings" compensable as

17  integral to the work process. Handwashing requirements for sanitation purposes would also be

18  compensable as necessary safety activities required by the employer and the nature of food processing

19  work. Similarly, in *Wren*, 256 F.R.D. at 213, the court maintained certification at the second stage for

20  donning required gear, travel time, pre-shift meetings, and post-shift tasks, holding the "violations

21  alleged by Plaintiffs are attributable to a uniform policy adopted by [the employer] of requiring

22  auditors to be ready to start counting, with equipment already donned, at the inventory start time."

23         Whether Defendants violated the FLSA by employing timekeeping policies that caused

24  underpayment of wages is a legal question that can be answered in the same way for all members of

25  the proposed collective action classes. *See Senne v. Kansas City Royals Baseball Corp.*, 934 F.3d

26  918, 949 (9th Cir. 2019) (finding collective action members were similarly situated where they shared

27  "common legal questions [that drove] the litigation" and resolving those questions would establish

28  liability under the FLSA). Accordingly, Plaintiffs have satisfied their burden to show they and the

PLTS' MTN FOR CONDITIONAL CERTIFICATION OF FLSA COLLECTIVE ACTION AND
APPROVAL OF NOTICE - 3:24-CV-07006-JD

collective action class members are similarly situated.

**3.  Differences in the Job Duties of Subclasses are Irrelevant.**

Differences in job duties and titles between sugar processing and warehouse employees are immaterial to Plaintiffs' FLSA claims since all non-exempt employees are subject to common policies and practices related to donning and doffing, briefing, timekeeping, and compensation. Courts in the Northern District have consistently held that different job functions do not defeat conditional certification when workers are subject to common policies. For example, in *Saleh v. Valbin Corporation*, 297 F.Supp.3d 1025 (N.D. Cal. 2017), the court rejected the defendant's contention that plaintiffs with different job types could not be similarly situated. *Saleh* noted that "courts often conditionally certify collective actions that include multiple job types and titles," citing cases involving eleven, six, and seven different job titles. *Id.* at 1034. Similarly, the court in *Wellens v. Daiichi Sankyo, Inc.*, No. 13-CV-00581-WHO, 2014 WL 2126877, at *2 (N.D. Cal., 2014) certified six different job titles employed in three different hospital divisions. In *Adams,* 242 F.R.D. at 537-38, the court granted conditional certification of a putative class that spanned multiple states and over 60 work locations, rejecting the defendant's arguments that individualized inquiries (e.g., into damages or site-specific variations) precluded certification.

The key inquiry is whether the alleged policies apply uniformly across job classifications. In *Saleh*, the court found it telling that the employer "d[id] not contend that role players with different job types or job titles worked different hours, were subject to different overtime policies, had different sleeping arrangements, or were subject to different policies about remaining on base." 297 F.Supp.3d at 1034. Here, sugar processing and warehouse workers are subject to similar Pre- and Post-Shift work and compensation policies. (Bello-Lafrades Decl. ¶¶ 4-11, 16-28; Brown Decl. ¶¶ 4-11, 16-28; FAC ¶ 93.) Because they are required to perform identical tasks to start and end their shifts and are subject to plant-wide compensation policies, any difference between their underlying work tasks should not defeat conditional certification.

**C.  Facilitated Notice to Similarly Situated Individuals is Appropriate to Allow Them the Opportunity to Exercise Their Rights Under The FLSA.**

The benefits of the collective action mechanism "depend[] on employees receiving accurate

and timely notice . . . so that they can make informed decisions about whether to participate." *Hoffmann-La Roche*, 493 U.S. at 170. Judicial involvement is critical to "ensure[] that 'the task is accomplished in an efficient and proper way'''" and early notice is beneficial because "an individual claimant under § 216(b) is not deemed to have initiated suit until his consent is filed" so if notice is delayed, the claims of potential opt-in plaintiffs may be diminished or extinguished by the running of the statute of limitations. *Bollinger v. Residential Cap., LLC*, 761 F. Supp. 2d 1114, 1119-22 (W.D. Wash. 2011). To join an FLSA collective action, an employee must give their consent in writing, and such consent is filed in the court in which the action is brought. 29 U.S.C. § 216(b). These opt-in employees are party plaintiffs, unlike absent class members in a Rule 23 class action. *See* 7B Wright, Miller, & Kane, *Federal Practice and Procedure* § 1807 at 474 n.13 (3d ed. 2005). The filing of an FLSA collective action tolls only the claims of those individuals who have expressed an intent to "opt-in" to the action by filing a consent form with the court. *See Perez v. Comcast*, 2011 WL 5979769, at *2 (N.D. Ill. Nov. 29, 2011) (citing 29 U.S.C. §§ 255, 256; *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982).)

Plaintiffs do not need to establish other potential class members have stated a desire to opt in. *Harris v. Vector Marketing Corp.*, 716 F.Supp.2d 835, 838 (N.D. Cal. 2010) (recognizing "that requiring named plaintiffs to proffer evidence that others desire to opt in ... puts the named plaintiff[s] [in] the 'ultimate chicken and egg dilemma'" (citations omitted)); *see also Mowdy v. Beneto Bulk Transp.*, No. C 06–05682 MJP, 2008 WL 901546, at *7 (N.D. Cal. Mar. 31, 2008) (stating "[a]s a practical matter it would make little sense to require plaintiffs to have the knowledge they attempt to obtain by gaining approval of notice from the court"). Nevertheless, the substantial participation here, as reflected by over 200 collective action Plaintiffs already filing consents to be included, supports the existence of similarly situated employees subjected to common policies.

Still, the substantial participation does not obviate the need for certification. *See Adams,* 242 F.R.D. at 535 (granting conditional certification where approximately 383 plaintiffs had already opted into the action). Fairness to putative plaintiffs, who may be unaware of this action because they no longer work for Defendants or live in the area, supports conditional certification and notice. The substantial participation prior to facilitated notice confirms that Defendants' workers were common

victims of a single policy of requiring uncompensated pre- and post- shift work, and are generally comparable to the putative class members. The strong participation by current and recent employees infers that absent class members that are unaware of the suit would benefit from formal court-supervised notice procedures. In *Leuthold*, 224 F.R.D. at 468, the court noted that "although some of the proposed class members are clearly aware of the lawsuit … it remains unclear how many of the proposed class members may want to participate in the suit." The court explained that "[b]ypassing the notice stage altogether would deprive the court of this information and might deprive some plaintiffs of a meaningful opportunity to participate." *Id*. Additionally, some class members are likely transitory workers and may not discover their right to participate absent facilitated notice.

Authorizing notice serves judicial economy by consolidating similar claims into one collective action. *Hoffmann-La Roche, Inc*. 493 U.S. at 172. Absent facilitated notice, other employees may file separate actions upon learning the outcome of this case. "[J]udicial economy is served by conditionally certifying a larger, more inclusive class, at this stage in the proceedings." *Littlefield v. Dealer Warranty Services, LLC*, 679 F.Supp.2d 1014, 1019 (E.D. Mo. 2010); *see also Houston v. URS Corp*., 591 F.Supp.2d 827, 835 (E.D. Va. 2008).

Plaintiffs request that the Court approve their proposed notice plan and forms, described in more detail below, and order Defendants to produce identifying information for members of the collective action so that notice may be promptly disseminated.

**D.  Plaintiffs' Proposed Notice Plan is Appropriately Tailored to this Lawsuit.**

Plaintiffs propose a 90-day opt-in period beginning with the distribution of initial notice by mail and email, and a reminder by the same method 45 days before the end of the opt-in period. Plaintiffs also request a workplace posting to all bulletin boards throughout the Crockett facility where union and company information is normally posted.

A 90-day notice period is regularly ordered by courts in this district. *Ramirez v. Ghilotti Bros. Inc.,* 941 F.Supp.2d 1197, 1207 (N.D. Cal. 2013). A 90-day opt-in period allows a putative collective action member sufficient time to research the case, contact Plaintiffs' counsel or acquire alternative representation, discuss with other employees, confer with family members, and otherwise weigh their options.

Regarding the form of notice, "[c]ourts often approve notice by mail, email, and text message." *Dudley v. TrueCoverage LLC*, No. CV 18-3760 PA (AGRX), 2018 WL 6431869, at *5 (C.D. Cal. Sept. 28, 2018); *see also Lewis v. Wells Fargo & Co.*, 669 F. Supp. 2d 1124, 1128 (N.D. Cal. 2009) ("[P]roviding notice by first class mail and email will sufficiently assure that potential collective action members receive actual notice of this case"). Furthermore, electronic signatures should be authorized and have become a standard and acceptable practice, and have been authorized in collective action lawsuits. *See, e.g., Woods v. Vector Mktg. Corp.*, No. C-14-0264 EMC, 2015 WL 1198593, at *6 (N.D. Cal. Mar. 16, 2015) (approving request for online submission of consent forms); *see also Dominguez v. Better Mortg. Corp.*, No. 820CV01784JLSKES, 2022 WL 17216831, at *7 (C.D. Cal. Oct. 24, 2022); *Randall v. Integrated Commc'n Serv., Inc.*, No. C20-5438JLR, 2021 WL 2328373, at *6 (W.D. Wash. June 8, 2021) (authorizing electronically signed consents).

Plaintiffs have established a website that allows putative class members to electronically submit a consent form and request the Court's authorization to use this method. (Mastagni Decl. ¶¶ 21-22.) Use of the website also helps with verification of the opt-in members because it includes a brief survey requesting identifying information. *Id.* The website also allows opt-in members to provide updated contact information to facilitate any future communications about the case. *Id.* The website is an organized, efficient, and safe method for the submission of electronically-signed consent forms.

### E.  Plaintiffs' Proposed Notice is Neutral, Accurate, and Provides Necessary Information.

Plaintiffs' proposed notice ("Notice"), attached as Exhibit A to the Proposed Order provides putative collective action members with an unbiased description of this lawsuit and accurately describes their rights under the FLSA. The Notice explains the facts and procedural posture of the case and answers commonly asked questions. It describes the various options individuals have to submit a "Consent to Join" form, including by mail, fax, or through the website. The Notice explains that any person who opts-in will be bound by the judgment on the FLSA issues. The Notice provides Plaintiffs' counsel's contact information, so that putative collective actions members may reach out with any questions or concerns, while also informing the putative members of their right to retain their own counsel.

1   Plaintiffs respectfully request that the Court approve notice to the Sugar Processing Collective

2   Action Members and Warehouse Collective Action Members to inform them of their right to opt in.

3   **F.   A Reminder Notice is Appropriate.**

4   Plaintiffs further request that the Court authorize a reminder notice to putative collective

5   action members who have not submitted consent forms as of 45 days before the opt-in deadline. The

6   proposed postcard and email reminder are attached to the Proposed Order as Exhibit B.

7   "[R]eminder notices to putative collective members are common, including in cases where

8   the court has approved notice by more than one means." *Dominguez v. Better Mortg. Corp.*, No.

9   820CV01784JLSKES, 2022 WL 17216831, at *7 (C.D. Cal. Oct. 24, 2022); *see also Ramirez,* 941

10  F.Supp.2d at 1211 (authorizing plaintiffs to send a second notice, substantially the same as the first,

11  as a reminder forty-five days after the issuance of the first notice); *Dudley,* 2018 WL 6431869, at *5

12  (approving reminder notice to be sent 30 days after the mailing of the original notice); *Shafer v. Red*

13  *Tie, LLC*, No. 2:20-CV-05726-ODW (PVCX), 2021 WL 1139739, at *4 (C.D. Cal. Mar. 25, 2021)

14  (authorizing plaintiffs to send an identical reminder notice via email and United States mail).

15  **G.   Plaintiffs Request Putative Member Contact Information to Facilitate Notice.**

16  While a substantial number of employees have already joined this action, Plaintiffs estimate

17  there are approximate 500 hundred or more putative collective action members. Early discovery of a

18  mailing list is necessary to facilitate notice. Courts routinely order that class contact information be

19  disclosed to plaintiff's counsel as part of the conditional certification in FLSA collective actions. *See,*

20  *e.g., Hoffmann-La Roche*, 493 U.S. at 170; *Deatrick v. Securitas Sec. Servs. USA*, No. 13-cv-05016-

21  JST, 2014 WL 5358723, at *2 (N.D. Cal. 2014) (ordering contact information disclosed for notice

22  purposes); *Otey v. CrowdFlower, Inc.*, No. 12-cv-05524-JST, 2013 WL 4552493, at *6 (N.D. Cal.

23  2013) ("courts routinely require defendants to produce the contact information of putative class

24  members"); *Cuevas v. ConAm Mgmt. Corp.*, No. 18CV1189-GPC(LL), 2019 WL 5320544, at *6

25  (S.D. Cal. Oct. 21, 2019) ("courts routinely allow the production of employees' mail and email

26  addresses and telephone numbers"); *Hamilton v. NuWest Group Holdings, LLC*, No. C22-1117RSM,

27  2023 WL 3582939, at *4 (W.D. Wash. May 22, 2023) (requiring production within 14 days of "An

28  Excel document containing the name, employee identification number, the date(s) and location(s) of

1  employment, email address, and last known mailing address for each putative member of the

2  collective"). Further, the court can impose "insubstantial" expenses upon a Defendant to effectuate

3  notice. *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 359 (1978).

4       Therefore, in addition to ordering notice, Plaintiffs request that the Court order Defendants to

5  provide Plaintiffs with a list of all putative collective action members with each individual's (1) name;

6  (2) last known home address; (3) last known email address; (4) most recent job title; (5) dates of

7  employment; (6) employee number; and (7) Collective Action Subclass. Plaintiffs request that the

8  Court order this information produced in Excel format and within 30 days of its order.

9  **IV.  CONCLUSION**

10       For the foregoing reasons, conditional certification of this collective action is appropriate.

11  Plaintiffs therefore respectfully request that the Court: (1) grant conditional certification, and (2)

12  approve mailing of the Notice to all putative Collective Action Members who were employed in the

13  proposed classes during the Collective Action Period.

14

15                     Respectfully Submitted,

16  Dated: January 5, 2026      **MASTAGNI HOLSTEDT, A.P.C.**

17          By:   /s/ David E. Mastagni

18          DAVID E. MASTAGNI
        TAYLOR DAVIES-MAHAFFEY

19          AMANDA R. MCCARTHY
        Attorneys for Plaintiffs,

20          JEFFREY BELLO-LAFRADES, et al.

21

22

23

24

25

26

27

28